## No. 11, 539.

## BOYLE *v.* BAY.

Decided March 7, 1927.   Rehearing denied March 28, 1927.

## Action for damages.   Judgment for plaintiff.

### *Reversed.*

1. LANDLORD AND TENANT—*Lease.* Unless expressed to the contrary, a lease contains, of necessity, a covenant for the quiet enjoyment of the leased premises.

2. *Lease—Eviction—Damages—Instructions.* Defendant gave plaintiff a lease on property to which she had no title. In an action for damages by the lessee after eviction by the owner, the giving of an instruction to the effect that in order to bar lessee from recovering on the implied covenant of quiet enjoyment, it should be established by a preponderance of the evidence that by wrongful misrepresentations or conduct he actively misled lessor into making the lease upon the wrong land, thus committing a fraud upon her, held prejudicial error.

3. *Lease—Eviction—Damages.* Where a lessee is evicted by paramount title, he is not limited to nominal damages.

4. DAMAGES—*Speculative—Mining Profits.* While it is true that damages which are only speculative, remote, imaginary or impossible of ascertainment, cannot be recovered, it is also true that where it was within contemplation of the parties to a lease of mining property, that in case of eviction the lessee would be entitled to recover for lost profits, these constitute an element of damage which may be recovered, provided there is adequate proof.

5. MINES AND MINING—*Coal—Profits.* There are few classes of business in which the cost of production can be more accurately computed than coal mining in an old field and in a developed mine.

6. DAMAGES—*Loss of Profits.* In an action for damages for loss of profits occasioned by the eviction of a lessee of coal lands, mathematical certainty as to the amount of such loss is not required.

7. INSTRUCTIONS—*Damages—Loss of Profits.* Instruction as to loss of profits in an action to recover damages occasioned by eviction of lessee from mining property, held without prejudice to defendant.

8. TRIAL—*Causes of Action—Election.* Where a complaint contains two so-called causes of action which are in fact but one, it is held that there is no merit in the contention that the trial court erred in refusing to require plaintiff to elect upon which cause he would rely.

9. APPEAL AND ERROR—*Reversal—Retrial—Specific Questions.* On reversal of a judgment in an action for damages, the reviewing court orders a retrial only upon the question of liability, holding the amount of damages to have been established on the first trial. Supreme Court Rule 54.

*Error to the District Court of La Plata County, Hon. W. N. Searcey, Judge.*

Mr. REESE McCLOSKEY, for plaintiff in error.

Mr. BENJ. B. RUSSELL, Mr. JAMES M. NOLAND, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE defendant in error was the plaintiff below and the plaintiff in error was the defendant. We will refer to them as they were designated in the trial court.

The defendant executed and delivered to the plaintiff a lease of certain land that the defendant did not own. After being in possession for several months, the plaintiff was evicted by the owner, The Porter Fuel Company. The plaintiff recovered judgment against the defendant, who brings the case here for review.

Across a certain forty acre tract of land in La Plata county there extends the outcrop of a coal vein, which is

believed to be the extension of the vein exposed and
worked in the Hesperus mine, about one-half mile to the
south.   The plaintiff had been in the coal business for
many years and knew about the outcropping on this tract
and wished to obtain a lease of the property.   The de-
fendant owned forty acres at Hesperus, but did not know
the description.   She lived in Arizona.   Her attorney,
Mr. McCloskey, and her private secretary, Mr. Berri,
looked after her business affairs in La Plata county.
Learning that the defendant had forty acres at Hesperus,
the plaintiff went to see the land.   He testified that, "Mr.
Morgan, who ran the post office, pointed it out."   Plain-
tiff then went to Berri, who referred him to McCloskey.
Concerning the two conversations that the plaintiff had
with McCloskey, there is an irreconcilable conflict.   Mc-
Closkey testified as follows:   "About first Sept., 1921,
Mr. Bay met me on the street and said Mrs. Boyle had
piece land at Hesperus he wanted to lease.   That he was
not sure the place he wanted was Mrs. Boyle's, that he
would go back and make further investigation.   He re-
turned about Dec. 1, 1921, to my office, and said he wanted
the lease on that land, and I said, 'Now, I have no ab-
stracts for that land up there, and have no idea where you
want to work, and have no description.'   He said, 'I will
go to the county treasurer's office and get description.'
And he went out of the office; gone some time, came back
with the description written on a piece of paper.   I gave
him an old lease had upon other property.   He read it,
made some objections, then he said, 'Now I will go over
to the land office and look on the plats to see whether this
description corresponds with the place I want.'   And he
came back and said it was all right, and I was to make
up lease and forward to him in California."

The plaintiff's version is this:   "Had talk with Mc-
Closkey, then saw him again, and in a day or two when
I furnished him with description of the land that I got
from the land office.   I did not say to him description

came from treasurer's office.  *  *  *  I did not volunteer to go to the treasurer's office and see what land she was assessed with, and pick out description of piece I wanted. *  *  *  I went to land office; got the numbers I wanted; took them to McCloskey, and told him if Mrs. Boyle owned this particular piece of ground,. I wanted to lease it, and McCloskey said he would look it up, and see whether she owned it or not.''

McCloskey drew the lease, using the description given to him by the plaintiff, the northwest quarter of the southwest quarter of section 14. That tract was neither owned by nor assessed to the defendant. Her land was the adjoining tract, the southwest quarter of the northwest quarter of the same section. The lease, dated December 29, 1921, was for five years commencing June 1, 1922. The plaintiff began mining operations in July, 1922, upon the land described in the lease, and continued until November 27, the same year, when he was evicted. The plaintiff expended in the development and operation of the property about $6,000, and received from the sale of coal, $2,200. He was awarded damages in the sum of $7,000.

Unless expressed to the contrary, a lease contains, of necessity, a covenant for the quiet enjoyment of the leased premises. *Milheim v. Baxter,* 46 Colo. 155, 103 Pac. 376, 133 Am. St. Rep. 50; *Thomas Cusack Company v. Pratt,* 78 Colo. 28, 239 Pac. 22, 44 A. L. R. 55. In this lease there was nothing expressed to the contrary. To avoid the effect of the implied covenant, the defendant pleaded facts substantially as above recited from the testimony of McCloskey, and further that the defendant's attorney did not know whether or not the description furnished by the plaintiff was a correct description of the defendant's land, but relied and acted upon the plaintiff's representation with reference thereto; and ''That if plaintiff was honestly endeavoring to search the records for the correct description of the land owned by defendant, and did so search the records, then the descrip-

tion was inserted in said lease erroneously by reason of the mutual mistake of both plaintiff and defendant.''

Under the instruction given by the court on this branch of the case, it was necessary for the defendant, in order to relieve herself from liability, to prove all the elements of a right of action for fraudulent representation. After reciting these elements, and stating that it is necessary for the defendant to prove them by a preponderance of the evidence, the court adds: ''In order to bar the lessee from recovering on such implied covenant of quiet enjoyment, it is necessary that it shall be established by a preponderance of the evidence that the lessee, by his own wrongful misrepresentation or conduct, actively misled the lessor into making the lease upon the wrong land, and thus committed either an actual or a constructive fraud upon the lessor.''

This instruction casts upon the defendant a burden greater than the law imposes, and the giving of the instruction was prejudicial error. If McCloskey informed the plaintiff that the former did not know the description of the defendant's land, and the plaintiff thereupon undertook to ascertain, for insertion in the lease, the correct description of the defendant's land, and thereafter did furnish to McCloskey a description of land, and furnished it as the correct description of the defendant's land, and McCloskey, not knowing that the defendant did not own the land, relied upon the description so furnished by the plaintiff, and inserted it in the lease, the plaintiff would not be entitled to judgment.

The defendant contends that where the eviction is by paramount title and not by the lessor, only nominal damages can be recovered. But one of the authorities cited by her affixes to the rule this qualification, ''Unless the landlord in leasing the premises was guilty of fraud or at fault.'' 36 C. J. p. 279, § 1022. There is also cited 16 R. C. L. p. 770, § 266, to the effect that, ''A distinction is made in the case of a breach arising out of an eviction by the landlord in disaffirmance of his own act or by a

fraud perpetrated upon the tenant and the case where the eviction is by a paramount title." But in the same section we find this: "However, according to the view taken in England and by the majority of the courts in this country, where the lessee is evicted under a title paramount he is permitted to recover as damages the value of his unexpired term less the rent reserved; and in addition thereto he has been allowed to recover special damages which may be deemed to have been within the contemplation of the parties. So where the lease contemplated the making of improvements and alterations by the lessee, he has been permitted to recover his loss resulting from expenditures in this respect."

The authorities are in conflict; but we believe it to be the modern and better rule, and therefore state it as the law of the case, that where a lessee is evicted by paramount title, he is not limited to nominal damages. *Wolf v. Megantz,* 184 Mich. 452, 151 N. W. 622, Ann Cas. 1916D, 1146, and note 1147.

Under the instructions, the jurors were permitted to consider, as an element of damage, the loss of anticipated profits. The defendant assigns as errors the admission of evidence concerning loss of profits and the instruction submitting the question to the jury. It is true, that damages that are merely speculative, remote, imaginary, or impossible of ascertainment, cannot be recovered. *Milheim v. Baxter,* 46 Colo. 155, 103 Pac. 376, 133 Am. St. Rep. 50; *Goldhammer v. Dyer,* 7 Colo. App. 29, 42 Pac. 177. "But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and

mutual understanding of both parties at the time it was entered into." *Anvil Mining Company v. Humble,* 153 U. S. 540, 549, 14 Sup. Ct. 876 (38 L. Ed. 814). The very object of this mining lease was the making of profits; it was in contemplation of the parties at the time of making the lease; and it was likewise within their contemplation that, in case of eviction, the lessee would be entitled to recover profits, provided his proof is adequate. *Smuggler-Union Mining Company v. Kent,* 47 Colo. 320, 328, 112 Pac. 223, approving the rule laid down in *Anvil Mining Company v. Humble, supra.* In the Smuggler-Union Mining Company case, however, it appeared, from plaintiff's own showing, that under the peculiar conditions of the lease as to the removal of ore, no profit could be realized; hence profits were disallowed. In *Rude v. Mac-Cormac,* 72 Colo. 222, 210 Pac. 845, Mr. Justice Denison said that, "There are few classes of business in which the cost of production can be more accurately computed than coal mining in an old field and in a developed mine."

In the present case there was evidence, much of it uncontradicted, to the effect that the outcrop of the vein extends across the whole forty acres; that it is the extension of the vein disclosed in the Hesperus mine, a half mile to the south; that the Hesperus mine had been operated for eighteen years, but is now closed down; that the plaintiff operated the property in suit nearly four months; that he mined and sold $2,200 worth of coal; that the vein was six feet thick; that a vein six feet thick would run six thousand tons of coal to the acre; that the roof and floor were good; that the only impurity was one-half to three-fourths of an inch of soft shale; that at least seven acres of coal land remained on the forty; that at the time of eviction the plaintiff was taking out about fifty tons per day; that he shipped coal to Alamosa, Durango, Rico, La Jara and Silverton, Colorado, and to Lumberton and Aztec, New Mexico; that he had contracted for the delivery of coal in the future. Testimony

was introduced as to the cost of production, the price received, and the net profit. True, the cost of mining might increase or decrease, but the cost of producing that already mined furnished a basis upon which a reasonable estimate could be made of the cost of extracting the remaining coal. There is no mathematical certainty as to the amount of coal remaining in the mine; but mathematical certainty is not required. *Anvil Mining Company v. Humble,* 153 U. S. 540. True, the mine was not a fully developed mine; it was, however, partly developed, sufficiently so to enable the jury to make a reasonable estimate of the amount and quality of the remaining coal. The court gave this instruction: ''You are instructed, if you find from a preponderance of the evidence, under the instructions of the court, that the breach or violation of the contract of lease, if any such has been shown, was the fault or the omission of the defendant herein, that under such circumstances the plaintiff is entitled to recover such profits, if any, as have been shown, by a preponderance of the evidence herein, would have been made thereunder by the plaintiff, except for such breach or violation or omission, but all such must be reasonable in amount, and must be such as may fairly be supposed to have entered into the contemplation of plaintiff and defendant when they made the lease in question, and they must be such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed, and they must be shown with reasonable certainty, and to be the actual, natural and proximate result of the wrong complained of, and the immediate result of the alleged breach.''

The court further said: ''The plaintiff is not entitled to recover upon his second cause of action unless the jury finds from a preponderance of all the evidence that the coal in the land described is sufficiently developed so that the jury can determine with reasonable certainty some certain number of tons of coal which could be marketed

therefrom, and the costs of extraction thereof, including all expenses of operation of the mine, timbers, props, rails, material, royalties, tramming, loading same on wagons, or cars, and transportation of same to market if so transported, cost of supervision, overhead and other charges in the operation of the mine. And the jury must further find that the plaintiff had an established market for such coal, or that a market existed where plaintiff could reasonably be expected to market said coal; and that plaintiff had the business ability to succesfully operate the coal business and sell said coal at a profit above all costs of production and operating expenses.''

Certainly the defendant cannot complain that these instructions are less favorable to her than she was entitled to. The evidence concerning profits was properly admitted, the instructions on this feature of the case amply protected the rights of the defendant, and the verdict of the jury indicates that the jury kept within the limits prescribed by law, and did not enter upon the forbidden field of conjecture.

The complaint contained what were alleged to be two causes of action; but in fact contained only one cause of action. The so-called first cause of action was for $6,-035.36, damages alleged to be the amount expended in labor and money in the making of valuable improvements, in procuring mining material, and in operating the property. The so-called second cause of action was for lost profits. The court instructed the jury that if they found for the plaintiff, they could assess his damages under either the first or the second cause of action, but not under both. The jury assessed the damages under the second. They had a right to do so. The defendant's contention that she was prejudiced by the court's refusal to require the plaintiff to elect upon which cause of action he would rely upon is without merit.

The trial of this case consumed several days. Much testimony was introduced, most of it bearing upon the

question of damages. There is no necessity for putting the parties to the trouble and expense of retrying the issue of damages; the amount thereof will stand as established. Rule 54 of this court.

The judgment is reversed, with directions to retry, under instructions in harmony with the views herein expressed, the sole question whether or not the defendant is liable to the plaintiff. If the verdict on that issue is in favor of the plaintiff, judgment should be entered in his favor for the amount heretofore assessed as damages; otherwise, judgment should be entered for the defendant.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.