**BROOKRIDGE FARM, Inc., v. UNITED STATES.**

No. 11225.

District Court, D. Colorado.

May 4, 1939.

SYMES, District Judge.

Action to recover damages for breach of contract dated April 29, 1938, pursuant to which plaintiff agreed to supply, as needed, a specified number of bottles of various sizes of Grade A, Type II, pasturized milk and buttermilk for Fitzsimons General Hospital, Denver, Colorado, for the fiscal year beginning July 1, 1938. The contract contained this pertinent provision: "As it is impossible to determine the quantities of different kinds of articles described in this Invitation for Bids and attached schedules that will be required during the contract term, each bidder whose bid is accepted will be required to deliver all supplies of the kind which he agrees to furnish that may be ordered during the contract term, except as otherwise indicated in the bid. Supplies will be ordered from time to time in such quantities as may be needed. The statements as to quantities listed in the schedules are for information only and will not relieve the War Department of its obligation to order from contractors all supplies that may, in the judgment of the ordering officers, be needed and shall not in any case relieve the contractor of his obligation to fill all such orders which he agrees to furnish. Bids will be considered if made with the proviso that the total deliveries will not exceed a certain specified quantity, but no proposal will be considered which provides that the Government shall guarantee to take any definite quantity."

At the conclusion of the trial the court held the notice given to plaintiff by the defendant's contracting officer on May 9, 1938, to the effect that the contract was in doubt and plaintiff should take no steps towards performance, was not an anticipatory breach; that the plaintiff was able to carry out the contract and duly tender performance on July 1, 1938. The defendant, however, by written notice a day or so before that date, and by refusal to accept milk tendered, breached the contract and relieved the plaintiff of any further performance.

The two questions reserved for decision argued and briefed by counsel are:

First: Was plaintiff's right of action for damages from October 1, 1938 to June 30, 1939, discharged by the second contract of September 21, 1938 between the parties? Second: What sum should plaintiff recover?

First: After the breach and beginning July 2, 1938, the defendant purchased the hospital's requirements of milk, etc., on the open market from the plaintiff, not under the contract but at the same price stated therein. This continued throughout July. Beginning August 1, 1938, and through September the defendant purchased its milk from another dairy. Plaintiff brought this suit September 2, 1938.

On September 21, 1938, the defendant called for bids for its requirements of milk and buttermilk for the hospital for the balance of the same fiscal year; that is from October 1, 1938, to June 30, 1939. The plaintiff submitted the lowest bids, which were less than the prices called for in the first contract. Its bid was accepted and a contract similar in all respects to the first contract, except as to the amount of milk to be furnished, was entered into and is now in effect.

The defendant says this second contract covering the last nine months of the fiscal year covered by the first contract, is inconsistent therewith and constitutes the only agreement between the parties, citing authorities in support of Judge Sanborn's view expressed in Housekeeper Pub. Co. v. Swift, 8 Cir., 97 F. 290, at page 294, that: "A subsequent contract completely covering the same subject-matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject."

We may accept this rule as applicable to facts within its limitations. In that case plaintiff sued for the purchase price for the sale of a printing and newspaper publishing plant, including good-will, concerning which the same parties had made two contracts, each specifying a different purchase price. Patently the subject matter was of such a peculiar nature that the same parties could have but one contract for its purchase. Furthermore, there was no claim of breach of either contract, the discussion being whether one of the agreements modified the other.

Of the authorities cited the McCabe case, McCabe Const. Co. v. Utah Const. Co., D.C., 199 F. 976, the contract was in process of performance when one party notified the other he would not perform unless the latter agreed to a modification. This was done under protest and the contract as thus modified was performed. The court held the original contract superseded by the second, while Consumers' Cotton-Oil Co. v. Ashburn, 5 Cir., 81 F. 331, held the first contract was waived before a second, concerning identical goods, was made. And Wood v. Brighton Mills, 3 Cir., 297 F. 594, presented the question of whether certain correspondence between a manufacturer and a buyer of fabric modified the original agreement. United States v. Lamont, 155 U.S. 303, 15 S.Ct. 97, 39 L.Ed. 160, involved a contract for dredging a particular channel in New York Harbor. With the possible exception of the Griffin case, In re Griffin Mfg. Co., D.C., 43 F.2d 624, they are all within the limitations of Judge Sanborn's rule that the subject matter dealt with must be identical and the two agreements inconsistent.

In our case the parties were dealing in a commodity in bulk, like wheat, apples, pigs, etc., for instance, and we fail to see what prevents them making two or more contracts for the purchase and sale of milk in large quantities. This right of action for breach of the first contract became vested in plaintiff July 1, 1938, two months before the second contract was entered into and was, and is, enforceable until waived or abrogated by acts or conduct of the parties.

According to an old and well-considered New York case, McKnight v. Dunlop, 5 N.Y. 537-544, 55 Am.Dec. 370: "Wherever a right of action has once vested in a party, it can only be destroyed by a release under seal, or by the receipt of something in satisfaction of the wrong done." We also lift the following pertinent statement from the same case: "The first contract having been put an end to by the defendant, it was competent for the plaintiff to enter into a new agreement with him, without a waiver of, or prejudice to his remedy, for the violation of the previous contract." Cited and followed in Comey v. United Surety Co., 217 N.Y. 268, 111 N.E. 832, Ann.Cas.1917E, 424. And in Colorado there must be a consideration to support a change or modification of an existing agreement. Richardson v. Jordan, 95 Colo. 56, 32 P.2d 826.

Three distinguished judges, Lurton, Taft and Cardozo, have approved the above rule. Comey v. United Surety Co., supra, and Lawrence v. Porter, 6 Cir., 63 F. 62, 26 L.R.A. 167. In the latter case the seller was delinquent, but the same principle was applied; it was said, page 67, the buyer was under the duty of mitigating the loss by replacing the goods by others, if possible, and: "If this duty be such as to require him to buy from the delinquent seller; if the article can be obtained only from him, or because he offers it cheaper than it can be obtained from others, such a purchase from the seller is not the abandonment of the original contract by the substitution of another." So we hold the first contract valid.

Second: Measure of damages.

 Plaintiff waives damage, if any for July, and his evidence on damages for August and September is undisputed. What is the measure from October 1st on? According to the provision of the contract set out verbatim at the beginning of this discussion, the number of bottles of milk called for is for information only—an outside amount that the seller must be prepared to supply from time to time to meet the needs of the hospital, and not an amount the defendant was necessarily required to take. The defendant, however, agreed to purchase from Brookridge all the milk that "may in the judgment of the ordering officers be needed." But what amount was needed? Defendant was not compelled to purchase any specified amount, yet we must have a quantity as a starting point in measuring the damages, which are: "The profits which would have been realized had the contract been performed, and which have been prevented by its breach." Boyle v. Bay, 81 Colo. 125, at page 130, 254 P. 156, at page 158. Frankly we would be in difficulties for want of an accurate measuring stick were it not for the second contract. The provisions of the latter, however, are identical on this phase of the case, and the performance thereof from October 1st to the date of trial, at least, indicates what the needs of the hospital were with sufficient accuracy. Counsel for the Government concede that if this view is adopted by the court, the damages exceed the limited jurisdiction of the court in such case, to wit, $10,000.

Judgment may be entered in favor of the plaintiff for $10,000, interest and costs.