No. 19,849.

JAMES F. DONAHUE, D/B/A AIRLINES CAB SERVICE, *v.* PIKES PEAK AUTOMOBILE COMPANY, ET AL.

(372 P. [2d] 443)

Decided June 11, 1962. Rehearing denied July 2, 1962.

Messrs. Jones, Meiklejohn & Kilroy, Mr. Alvin J. Meiklejohn, Jr., Mr. Leslie R. Kehl, for plaintiff in error.

Messrs. Murray, Baker & Wendelken, for defendants in error.

*In Department.*

Opinion by Mr. Justice Moore.

The parties appear in the same order as in the trial court and will be referred to as they there appeared or by name as follows: James F. Donahue, doing business as Airlines Cab Service, as Donahue; Pikes Peak Automobile Company as Pikes Peak; The Massachusetts Bonding and Insurance Company as Massachusetts; and The Columbia Casualty Company of New York as Columbia.

Two claims are set forth in the amended complaint, the first being against Pikes Peak in which it is alleged in essence that Pikes Peak operated in unlawful and unauthorized competition with Donahue in conducting an airport limousine service from March 1, 1956, to March 1, 1959, giving rise to a statutory cause of action under C.R.S. '53, 115-7-2. Compensatory damages of $37,500.00 and punitive damages in an equal amount are claimed by Donahue.

In the second claim, asserted against all defendants, it is alleged that competitive airport limousine operations were unlawfully conducted by Pikes Peak from December 11, 1956, to March 1, 1959; that said competi-

tive operations had been enjoined by the trial court's judgment in a previous action, which judgment and injunction was stayed by this court under appropriate procedures in which a bond was filed by Pikes Peak as principal, and Massachusetts as surety; that a later supersedeas bond was filed by Pikes Peak as principal, and Columbia as surety. Upon affirmance of the trial court Donahue asserts that the bond conditions became operative and that he is entitled to damages against each surety, in the total amount of each surety's bond. Further, Donahue alleges that he is entitled to judgment against Pikes Peak, jointly and severally with the aforesaid sureties, in the amount of the bonds, and individually against Pikes Peak for damages in excess of the amount of the bonds.

Separate answers were filed for each defendant. Pikes Peak admits the conduct of an airport limousine service during the period alleged, but denies the unlawfulness of such operations. On the second claim Pikes Peak admits the execution of the bonding agreements and that no payments had been made, but denies liability to Donahue for damages. The answer of both sureties asserts a lack of knowledge of matters alleged in the complaint, and therefore denial was made of all averments except that each surety admits the bonding agreement entered by it and that no payments have been made.

Request for admissions filed by Donahue were responded to by Pikes Peak; interrogatories submitted were answered and at the pre-trial conference it was ordered that certain documents including pertinent income tax returns and annual reports of Donahue be admitted in evidence. It was agreed that the question of liability would be determined on the basis of the pleadings, admissions, answers to interrogatories and the pre-trial order.

On the date set for trial, testimony pertaining to the damages allegedly sustained by Donahue was intro-

duced, at the conclusion of which the trial court took the case under advisement. Shortly thereafter the court entered its findings and judgment dismissing Donahue's complaint and assessing costs against him. He seeks reversal by writ of error.

For a full understanding of the history of this controversy and the pertinent matters which now command our attention, we make reference to the opinions of this court in *Public Utilities Commission v. Donahue*, 138 Colo. 492, 335 P. (2d) 285, and *Donahue v. Public Utilities Commission*, 145 Colo. 499, 359 P. (2d) 1024. The factual situation disclosed in those opinions must be borne in mind for a full understanding of the matters now considered, and in this opinion we include only a statement of facts and events which do not appear in either of the opinions to which reference is made.

In the first of the opinions above mentioned it was determined by this court that the conduct of Pikes Peak in operating a scheduled service to and from the airport in Colorado Springs, in competition with Donahue, between March 1956 and February 1959, was unlawful.

In the second of the above mentioned opinions it was determined that the activity of Pikes Peak in competing with Donahue, following the announcement of our opinion in the first case, also was illegal. The only period of time involved in the matters now before us is from March 1956 to February 1959. Notwithstanding the firm pronouncement of this court in each of the foregoing opinions that the conduct of Pikes Peak was at all times illegal and was carried on in violation of the rights of Donahue, the trial court in the instant action included within its findings and judgment references to this period of time, and with reference thereto made a specific finding that the activity of Pikes Peak in competition with Donahue was "lawful and proper and specifically authorized under its certificate of public conveinience and necessity." The court erroneously concluded that the illegality of the conduct of Pikes Peak

was not established until the announcement of the opinion of this court in the first Donahue case, and that during all the time the action was pending the heavy damage sustained by Donahue must be borne by him notwithstanding the competition of Pikes Peak was at all times without authority of law. The trial court seemingly based this conclusion on the erroneous assumption that Pikes Peak "should not be required to pay the price of error on the part of the Public Utilities Commission since said defendant acted in good faith and in reliance on the orders and judgment of the commission and since said orders and judgment were not void but only erroneous." Overlooked in this statement is the fact that the district court promptly vacated and set aside the illegal order of the commission under which Pikes Peak functioned at its peril.

The statute on which Donahue bases his claim for damages (C.R.S. '53, 115-7-2) is as follows:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by the constitution, any law of this state or any order or decision of the commission, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom. If the court shall find that the act or omission was willful, the court, in addition to the actual damages, may award damages for the sake of example and by way of punishment. An action to recover such loss, damage or injury may be brought in any court of competent jurisdiction by any corporation or person."

If we have not heretofore made clear the question as to whether the activity of Pikes Peak in competing with the busines of Donahue was unlawful, we now assert without equivocation that from the very beginning the conduct of Pikes Peak was illegal and

286

such as to subject it to liability for damages under the terms of the statute above quoted.

■ Massachusetts and Columbia having executed bonds conditioned for the payment of damages resulting from the delay brought about in prosecuting a writ of error to this court, are liable to Donahue for damages sustained by him because of this delay to the extent of the coverage provided in said bonds.

On the question of damages suffered by Donahue as presented by the evidence submitted upon the trial, the finding and judgment of the court contained the following:

"6. Under the view taken by the Court, determination of damages is not necessary but if such determination were material, the Court concludes that it could not determine or allow damages without resort to speculation.

"7. The difficulty of appraising damages is not sufficient grounds for denying damages, but here the Court would have to speculate: *First,* on the amount of damages, since the Plaintiff's evidence is conflicting and contradictory; *Second,* as to the cause of damages since it appears that much of the Plaintiff's loss of business was due either to his voluntarily surrendering or losing through no fault of the Defendant's certain of the air express, freight and mail business; and *Third,* as to the allocation of loss, if any, suffered for fractional parts of a year, since there was no evidence of damage except on an annual basis and no showing as to whether all portions of the year are equally productive of revenue; *Fourth,* as to the amount of loss, if any, attributable to depreciation of service and equipment; and *Fifth,* the amount of loss, if any, to be allocated or attributed to loss of business to other transportation facilities which supplied comparable services; and hence the Court has no reasonable basis for computing damages other than speculation.

"8. The Plaintiff, under the evidence, is not entitled to damages, either compensatory or as a penalty."

In each of these separately numbered conclusions the trial court was in error. Donahue does not seek damages for loss of air express, freight and mail business, nor for any loss of business sustained by reason of operations by any persons other than Pikes Peak. We have carefully considered plaintiff's evidence of damage allegedly sustained by him and we do not find it to be substantially conflicting or contradictory. It is neither necessary nor proper to split the alleged damage into a fractional part of any particular year.

 The trial court failed to correctly apply a well-established rule governing an award of damages under circumstances disclosed by the record in this case. From the opinion of this court in *Colorado National Bank, et al., v. Ashcraft*, 83 Colo. 136, 263 Pac. 23, we quote the following:

"There is sufficient evidence to bring the case within the rule permitting the recovery of lost profits. The fact that they could not be ascertained with certainty, is not a valid objection. *Denver v. Bowen*, 67 Colo. 315, 319, 184 Pac. 357; *Big Five Min. Co. v. Left Hand Ditch Co.*, 73 Colo. 545, 216 Pac. 719; *Goldstein v. Rocky Mt. Envelope Co.*, 78 Colo. 341, 241 Pac. 1110; *Westesen v. Olathe State Bank*, 75 Colo. 340, 343, 225 Pac. 837. In the last case we said, 'Where the cause of the damage is established, that the amount or extent of damages is uncertain is no objection'; and we quoted with approval the following language from the opinion in *Rule v. McGregor*, 117 Iowa 419, 90 N.W. 811: 'Uncertainty as to the amount of damages is not an obstacle in the way of their allowance. Uncertainty as to the cause from which they proceed is what has occasioned trouble, and only when it cannot be ascertained with reasonable certainty that these have sprung from the breach alleged are they to be rejected as too remote, or conjectural or speculative.' "

In *Hyman & Co. v. Velsicol Corporation,* 123 Colo. 563, 233 P. (2d) 977, we find the following pertinent language:

" * * * The rule is that damages based upon mere speculation and conjecture are not allowable; however where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts. Any other rule would result in rewarding a wrongdoer. *Eastman Kodak Co. v. Southern Photo Materials Co.,* 273 U. S. 359, 47 Sup. Ct. 400, 71 L. Ed. 684; *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U. S. 555, 51 Sup. Ct. 248, 75 L. Ed. 544. The uncertainty as to the proof of the exact amount of damages suffered by plaintiff does not preclude a recovery. * * * "

■ Throughout the prolonged litigation between the parties to this action the rights of Donahue have been flagrantly violated and he has suffered substantial damage by reason thereof. There is ample evidence upon which an award of damages should have been made.

The judgment is reversed and the cause remanded with directions to grant a new trial upon the issue of damages only.

MR. CHIEF JUSTICE DAY and MR. JUSTICE HALL concur.