536 P.2d 328 (1975)
Richard W. SORENSON and Carol Sorenson, Plaintiffs-Appellees,
v.
Charles CONNELLY, Defendant-Appellant.
No. 74-416.
Colorado Court of Appeals, Div. I.
June 3, 1975.
*329 Ball & Easley, John W. Easley, Jr., Loveland, for plaintiffs-appellees.
Newton & Johnson, Arnaud Newton, Ft. Collins, for defendant-appellant.
Selected for Official Publication.
PIERCE, Judge.
Defendant Connelly appeals from a judgment in the amount of $2,500 entered in favor of plaintiffs, the Sorensons, for breach of a contract for sale and purchase of improved real estate. We affirm.
On May 26, 1972, Connelly and a representative of F & M Associates, real estate agent for the Sorensons, signed a document entitled "Specific Performance Contract (Residential)."
On June 2, the Sorensons signed the same document. The agreement provided for the sale to Connelly of a residence owned by the Sorensons for a total purchase price of $49,500, comprised of a $1,200 down payment paid by check on May 26, and $8,700 note secured by a second deed of trust, and $39,600 from "a new new loan to be applied for and paid for by the purchasers [sic]."
Contemporaneously, Connelly caused a typewritten provision to be added to the printed contract form, which stated "Contract contingent upon obtaining above described new loan." In addition, Connelly wrote "Hold for deposit on security contract" on the $1,200 check, and the realtor's agent added to the check the notation "till loan commitment." Another typewritten provision of the agreement stated that "A written loan commitment must be furnished to sellers by June 15, 1972."
On June 28, Connelly and the Sorensons executed an amendment to the agreement which extended the time for payment of the $8,700 note described in the original agreement. Soon thereafter, on approximately July 1, Connelly's wife, at Connelly's direction, wrote a letter to the real estate agent stating that "we have made other arrangements regarding a house," and stopped payment on the $1,200 check. On July 5, the Sorensons' attorney advised Connelly's wife that unless the Sorensons heard from Connelly before noon on July 7, they would assume that the letter was a repudiation of the agreement. Connelly never responded, and the Sorensons listed the property with another real estate agent on July 11, resulting in a sale on August 17 for a price of $47,000.
On this appeal, Connelly argues that the contract was conditional upon obtaining financing and therefore was not binding, that an improper measure of damages was applied, and that there was insufficient evidence of fair market value of the property upon which to base a computation of damages.
Connelly's first argument is predicated upon the typewritten provision that the contract was "contingent" upon obtaining the loan for $39,600. We must reject his contention that the contract never became binding because the contingency never *330 occurred. The case of Sala v. Hay, 160 Colo. 169, 415 P.2d 330, stands for the proposition that such provisions imply a promise that the purchaser will make reasonable efforts to secure the loan, and that a suit upon the contract lies if the purchaser fails to make such reasonable efforts. The trial court found, upon evidence, that Connelly made no attempt to secure the loan. Therefore, Connelly cannot rely on the contingency to avoid liability on the contract.
In connection with this contingency argument, Connelly maintains that an agreement existed whereby the obligation to obtain the financing for the $39,600 loan was to borne by the real estate agent. The contract clearly and unambiguously places the obligation to obtain the loan upon the purchaser. Even if we were to consider the parol evidence admitted on this issue, we would conclude that there is sufficient evidence to support the trial court's findings that the real estate agent agreed only to assist Connelly in obtaining the loan and that the agent performed its promised assistance.
Connelly's contention that the Sorensons' damages should have been limited to $1,200 is based upon the following printed provision of the contract:
"Time is of the essence hereof, and if any payment or any other condition hereof is not made, tendered, or performed by either the seller or the purchaser as herein provided, then this contract, at the option of the party who is not in default, may be terminated by such party, in which case the non-defaulting party may recover such damages as may be proper. In the event of such default by the seller, and the purchaser elects to treat the contract as terminated, then all payments made hereon shall be returned to the purchaser. In the event of such default by the purchaser, and the seller elects to treat the contract as terminated, then all payments made hereunder shall be forfeited and retained on behalf of the seller. In the event, however, the non-defaulting party elects to treat this contract as being in full force and effect, then nothing therein shall be construed to prevent its specific performance."
Connelly maintains that this provision is a liquidated damages clause that operates to limit the Sorenson's damages to the $1,200 down payment and thereby prevents them from collecting damages based on the "benefit of the bargain" rule. See Marvin v. Pueblo Dairymen's Cooperative, Inc., 131 Colo. 601, 284 P.2d 238. We disagree.
The elements of a valid liquidated damages clause are that the anticipated damages are uncertain in amount or difficult to be proved, that the parties intend to liquidate the damages in advance, and that the amount is reasonable, in that it is not greatly disproportionate to the presumed loss or injury. Perino v. Jarvis, 135 Colo. 393, 312 P.2d 108. We conclude that the quoted provision was not intended by the parties to be a liquidated damages clause nor to limit either the purchaser's or the sellers' damages in the event of a breach.
While the terms employed by the parties are not conclusive, see Grooms v. Rice, 163 Colo. 234, 429 P.2d 298; Connelly v. Zee, 366 F.Supp. 1229 (D.St.Croix), they are evidence of the parties' intentions.
Here, the provision does not use the term "liquidated damages," see Oldis v. Grosse-Rhode, Colo.App., 528 P.2d 944, and does not designate a specific sum as the recoverable damages. Nor are the payments made under the contract defined to be the only "proper damages" recoverable by the non-defaulting party. If we were to accept Connelly's argument that the provision completely liquidates the anticipated damages, we would be forced to conclude that the purchaser, upon a breach by the sellers, would be entitled only to a return of the payments made under the contract. Such an interpretation would nullify the clear language of the provision that the non-defaulting party "may recover such damages as may be proper." We refuse to espouse *331 such an anomalous interpretation of the contract provision.
Therefore, we construe the clauses relating to the payments made under the contract to mean only that such payments should be held in the hands of the non-defaulting party rather than that the non-defaulting party's damages are liquidated in the amount of such payments. Cf. Costello v. Johnson, 265 Minn. 204, 121 N.W.2d 70. And see Rockwood & Co. v. Adams, 486 F.2d 110 (10th Cir.). Since the sellers' damages were not liquidated by the contract, the trial court was correct in measuring the sellers' damages by the general measure in such casesthe difference between the contract price and the fair market value at the time of the breach. F. Poss Farms, Inc. v. Miller, Colo.App., 529 P.2d 1343.
The final assertion of error raised by Connelly is that there was insufficient evidence of fair market value at the time the contract was breached to support the trial court's assessment of damages.
The trial court found that Connelly repudiated the contract on July 1, and that the Sorensons sold the property to a third party on August 17. The court also held that the proper measure of the Sorensons' damages was "their loss of bargain, namely the difference between the contract price of $49,500 and the sale price of $47,000 finally obtained for the property."
While resale of the property following the breach was evidence of the market value at the time of the breach, it was not conclusive evidence thereon. Aboud v. Adams, 84 N.M. 683, 507 P.2d 430. Here, the trial court's reference to the "loss of bargain" rule confirms that the trial court did not rely solely on the resale price to establish the fair market value of the property at the time of the breach. Furthermore, two witnesses who were familiar with the real estate market in the area gave testimony from which it would be reasonable to conclude that $47,000 was within a reasonable price range during this time period for residences similar to the subject property. Therefore, we conclude that there was sufficient evidence to support the trial court's implicit finding that the $47,000 resale price constituted the fair market value of the property at the date of the breach.
Judgment affirmed.
COYTE and BERMAN, JJ., concur.