**REPUBLIC NATIONAL LIFE INSUR-ANCE COMPANY, a Texas corpora-tion, Plaintiff-Appellant,**

v.

**RED LION HOMES, INC., a Colorado corporation, Defendant-Appellee.**

No. 80–1738.

United States Court of Appeals, Tenth Circuit.

March 21, 1983.

Rehearing Denied May 3, 1983.

brief), of White & Steele, Denver, Colo., for plaintiff-appellant.

Alan E. Karsh, Denver, Colo., for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

In this diversity case, Republic National Life Insurance Company appeals the trial court's award of $270,480 in damages to Red Lion Homes, Inc. for breach of contract. Republic owned a tract of land near Loveland, Colorado, part of which consisted of 92 undeveloped lots. In January 1972 Republic and Red Lion signed an agreement for Republic to convey the lots to Red Lion "on or before November 1, 1972." Republic was required to install all on-site and off-site improvements, including curbs, sewer and water extensions, street lighting, grading, and paving prior to the conveyance. The contract was expressly made contingent on annexation of the lots by the City of Loveland and approval of the lots by the FHA and the VA.

Republic hired an engineering company to oversee completion of the improvements. Various delays occurred, and Republic acknowledges that the improvements were not completed by November 1, 1972 and that the lots were not made available to Red Lion until February 1975. Although after November 1972 Red Lion periodically expressed continued interest in the lots, it refused to purchase them in 1975. Republic then sought a declaratory judgment that Red Lion had not acquired any rights in the real estate by virtue of the 1972 contract. Red Lion counterclaimed, alleging that Republic had breached its contract by not completing the improvements until 1975.

The claims were heard separately. Republic received the declaratory judgment it had requested, but a second trial judge, subsequently hearing Red Lion's counterclaim in a bench trial, held that Republic had breached the contract to prepare the lots and convey them. The court concluded that (1) the agreement was enforceable

James M. Dieterich, Denver, Colo. (Lowell White, Denver, Colo., with him on

against Republic, (2) time was of the essence in performing the contract, (3) Republic had not made reasonable efforts to complete the improvements on time, (4) Red Lion's continued interest in purchasing the lots did not constitute a waiver of its right to demand performance in accordance with the contract terms, and (5) Red Lion was entitled to damages based on the profit it would have received from building and selling houses on the lots. These conclusions are all contested in the appeal.

## I

We agree with the trial court that under Colorado law the agreement between Republic and Red Lion was an enforceable contract of sale. The mutual promises of the parties provided sufficient consideration, *see DeFeyter v. Riley,* 43 Colo.App. 299, 606 P.2d 453, 454 (1979), and the language of the agreement indicates that it was a contract of sale rather than merely an option to purchase, *see Bursack v. Moore,* 165 Colo. 414, 439 P.2d 993, 995 (1968); *DeFeyter v. Riley,* 606 P.2d at 454–55. That the contract was contingent upon city, FHA, and VA approval of the improvements did not limit its enforceability. Rather, this provision imposed a duty on Republic to use reasonable efforts to secure the necessary approvals. *See Sala v. Hay,* 160 Colo. 169, 415 P.2d 330, 332 (1966) (when contract is contingent on obtaining additional financing, purchaser must make reasonable efforts to secure it); *Sorenson v. Connelly,* 36 Colo.App. 168, 536 P.2d 328, 329–330 (1975) (same). Republic could not rely on the contingent nature of the approvals to avoid its duty to attempt to secure them.[1]

## II

The trial court held that the circumstances surrounding the agreement necessarily implied that the parties intended time to be of the essence of the contract, although the agreement contained no express provision to this effect.

Time is of the essence when "the nature of the property or the exigencies of the transaction make timely performance essential." *MaceRich Real Estate Co. v. Holland Properties Co.,* 454 F.Supp. 891, 896 (D.Colo.1978). Regardless of the provisions of a contract, the circumstances surrounding the transaction must show that timely performance was in fact essential. *Houy v. Davis Oil Co.,* 175 Colo. 180, 486 P.2d 18, 21 (Colo.1971). The trial court determined that discussions between Republic and Red Lion indicated they intended the lots to be ready for conveyance as early as July 1972, and that November 1, 1972 was an outside, final date that included a cushion for unforeseen delays. The court relied on Republic's orders to its engineering firm to complete the lots on a priority basis as further evidence of the parties' intent that time be of the essence of the contract. The record supports the trial court's conclusion that time was of the essence and that Republic failed to perform in a timely manner. The parties contemplated speedy completion of the improvements and approvals in part so that Red Lion could commence building the homes before the 1972 winter season hampered construction. Completion of the lots by 1975 was not timely in these circumstances. Since Republic failed to perform by the specified time, it breached the contract.

Colorado law did not require Red Lion to tender money or otherwise offer to perform on November 1, 1972. Rather, in order to establish Republic's breach, Red Lion had only to be able to perform, *see DeFeyter v. Riley,* 43 Colo.App. 299, 606 P.2d 453, 455

---

1. The first trial judge held that Red Lion had no rights or interest in the lots. Republic seeks to show from this holding that there never was a valid contract. Republic argues that a valid contract for the purchase of real estate gives rise to an equitable interest in the property in the purchaser, and that the first judge held Red Lion had no such interest. Therefore, Republic argues, a valid contract never existed. This argument is unconvincing. That Red Lion possessed no equitable interest in the property in 1978 does not mean the contract was invalid in 1972. Furthermore, the first trial judge specifically left open the possibility that Red Lion could pursue claims other than that of an interest in real estate at a later date.

(1979), and the trial court specifically found that it was.

### III

The trial court held that Republic failed to make reasonable efforts to develop the property and secure the approvals by the contract date. Republic, which is not a developer but an insurance company, hired the engineering firm Hogan & Olhausen to make the improvements and secure the approvals. Hogan & Olhausen was already in charge of developing adjacent subdivision lands for Republic. The trial court specifically found that Hogan & Olhausen worked "for and on behalf of Republic in all development matters for which Republic was responsible," R. II, 230, and that "Republic retained a right of final approval or disapproval over Hogan and Olhausen's decisions, and Hogan and Olhausen understood and consented to that right of control." *Id.* Testimony in the record supports these findings. From these factual findings the court reasonably concluded that Hogan & Olhausen acted as Republic's agent for developing the lots and obtaining the approvals. *See Ocrant v. Dean Witter & Co.,* 502 F.2d 854, 858 (10th Cir.1974) ("[Agency] relationship exists if the conduct of the parties manifests the willingness of one person to have another act for him subject to his control, and the consent of the other so to act."); *accord Pouppirt v. Greenwood,* 48 Colo. 405, 110 P. 195, 196 (1910); *Butler v. Colorado International Pancakes, Inc.,* 510 P.2d 443, 445 (Colo.App.1973).

■ In finding that Republic and its agent failed to make reasonable efforts to complete the development and secure the approvals by the contract date, the court cited several examples of what it considered unreasonable delay, including failure to begin preliminary earthwork until July 25, 1972, and failure to perform competently and quickly a necessary noise abatement study. These and other examples contained in the record support the court's finding that Republic and its engineers did not make the effort necessary to meet the short deadline set in the agreement. Republic's

failure to make reasonable efforts to complete the improvements and secure the approvals on time gives rise to a cause of action for breach of its obligation under the contract. *See Sala v. Hay,* 160 Colo. 169, 415 P.2d 330 (1966); *Sorenson v. Connelly,* 36 Colo.App. 168, 536 P.2d 328 (1975).

### IV

■ Republic argues that even if it did breach the contract, Red Lion either waived its right to assert the breach or should be estopped from asserting the breach by having continued to express interest in purchasing the property after November 1, 1972. The trial court rejected both of these contentions, and we affirm.

"[W]aiver is the intentional relinquishment of a known right . . . ." *Ewing v. Colorado Farm Mutual Casualty Co.,* 133 Colo. 447, 296 P.2d 1040, 1043 (1956). There is no evidence that Red Lion ever formally waived its rights. Furthermore, the trial court held that Red Lion did not by implication intend to abandon its right to sue for the breach. Rather, the court specifically found that Red Lion's continuing interest was in "*whether* the improvements were completed, *whether* the lots were still available, and if so, on what terms." R. II, 231 (emphasis in original). Because there is evidence in the record supporting the trial court's interpretation of the facts, and because we do not think that a buyer's continued interest in purchasing property after breach of a contract for sale constitutes a waiver of the breach as a matter of law, we uphold the conclusion that Red Lion did not waive its right to assert the breach.

Republic also claims that Red Lion should be estopped from asserting the breach because in 1973 it asked Republic to make a change in some of the curb improvements, which Republic made at some additional expense. Republic also argues that Red Lion's continued expressions of interest in purchasing the property estop it from asserting the breach. Estoppel will lie against a party "who by his language or conduct leads another to do what he would not otherwise have done [and] . . . sub-

ject[s] such person to loss or injury by disappointing the expectations on which he acted." *Mabray v. Williams,* 132 Colo. 523, 291 P.2d 677, 679 (1955). "[T]he doctrine of estoppel is not favored" in Colorado, *University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155, 1158 (1976), however, and " 'should be applied only when all the elements constituting an estoppel clearly appear,' " *Susman v. Exchange National Bank of Colorado Springs,* 117 Colo. 12, 183 P.2d 571, 573 (1947) (quoting *Langley v. Young,* 72 Colo. 466, 211 P. 640, 642 (1923)).

Here the trial court found "[t]here is no evidence that Republic was induced to continue its development of the lots, or otherwise alter its position, in reliance on continued recognition of the contract by Red Lion." R. II, 231. Conflicting inferences can be drawn from Red Lion's continued expressions of interest in the property and from Republic's willingness to make a minor change requested by Red Lion. One inference is that Red Lion recognized the continued existence of the contract, the other that Red Lion remained interested as a potential purchaser of the lots when they were ready. Republic's compliance with the change in the curb improvements could imply that Republic thought there was a continuing contract; it could also imply that Republic made the change as an inducement to sustain Red Lion's interest. The trial court obviously thought that Red Lion did not consider the contract to be still in effect and thought that Republic was not altering its position in reliance upon continued recognition of the contract by Red Lion. The record contains sufficient evidence to support the court's ruling; we cannot say it is clearly erroneous. *See Higgins v. Oklahoma ex rel. Oklahoma Employment Security Commission,* 642 F.2d 1199, 1202 (10th Cir.1981).

## V

■ The most difficult issues in this appeal are whether the trial court was correct when it used lost profits as the measure of Red Lion's damages and, if that measure was proper, whether Red Lion's

proof was sufficient to sustain the $270,480 awarded. Damage awards in contract cases attempt to place the parties in the same financial position they would have occupied had the contract terms been fulfilled. *See, e.g., A to Z Rental, Inc. v. Wilson,* 413 F.2d 899, 908 (10th Cir.1969). In Colorado, the normal measure of damages for breach of an agreement to convey real estate is the difference between the market value of the property and the purchase price contracted for by the parties. *See Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13, 22 (1977) (breach of real estate option contract); *Minshall v. Case,* 148 Colo. 12, 364 P.2d 868, 873 (1961) (breach of real estate sales contract). Had the contract in question been carried out, Red Lion would have received from Republic 92 fully improved and approved lots, annexed into the City of Loveland. The normal measure of damages for breach of the agreement, then, would be the difference between the market value of such lots and the price Red Lion agreed to pay for them.

The trial court's damage award here, using the lost profits measure, was based on its conclusion that the special circumstances of the agreement justified the award of special damages for its breach. The trial court noted that Colorado follows the general rule of damages that derives from *Hadley v. Baxendale,* 9 Exch. 345, 156 Eng. Rep. 145 (1854). *See Western Union Telegraph Co. v. Trinidad Bean & Elevator Co.,* 84 Colo. 93, 267 P. 1068, 1069 (1928). That rule dictates that when the circumstances surrounding a contract indicate breach of the agreement will cause special or unusual harm, and at the time the agreement is entered into the parties know the nature of the circumstances and the potential harm, a breaching party will be held liable for that harm.

■ The trial court correctly concluded that Republic knew the use to which Red Lion planned to put the property. Republic agreed to improve the lots and secure the approvals specifically so that Red Lion could construct tract houses. Furthermore, the record indicates Republic's knowledge

that Red Lion was a tract builder and only bought and built on lots that were completely improved, annexed, and approved by the appropriate federal agencies. Thus, Republic knew that the 92 lots in question, which were adjacent to other subdivision property, presented an opportunity uniquely desirable to Red Lion. Republic can be presumed to have known at the time the contract was entered into that if it failed to convey the land in the condition agreed upon it would deprive Red Lion of the opportunity to build the houses, and hence of the profit Red Lion would earn by so building.

Colorado courts have applied the lost profits measure of damages in cases in which the surrounding circumstances indicate such an award is appropriate.

> " '[I]t is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into.' "

*Boyle v. Bay,* 81 Colo. 125, 254 P. 156, 158–59 (1927) (quoting *Anvil Mining Co. v. Humble,* 153 U.S. 540, 549, 14 S.Ct. 876, 879, 38 L.Ed. 814 (1894)). The lost profits measure has been used in a variety of cases in which the parties were deemed to have contemplated the results of a breach and the attendant loss of profits. *See Donahue v. Pikes Peak Automobile Co.,* 150 Colo. 281, 372 P.2d 443 (1962) (breach of agreement not to compete); *Uinta Oil Refining Co. v. Ledford,* 125 Colo. 429, 244 P.2d 881 (1952) (breach of exclusive distributorship agreement); *Colorado National Bank v. Ashcraft,* 83 Colo. 136, 263 P. 23 (1927) (breach of lease of farm land on which plaintiff planned to raise crops); *Boyle v. Bay, supra* (breach of lease of property that plaintiff planned to mine); *Gray v. Linton,* 38 Colo.

175, 88 P. 749 (1906) (breach of lease of property on which plaintiff operated rooming house); *see also A to Z Rental, Inc. v. Wilson,* 413 F.2d 899 (10th Cir.1969) (breach of parts of franchise agreement).

No Colorado case directly addresses lost profits as a measure of damages for breach of a contract to convey lots to a tract home developer. The trial court relied on *Gilmore v. Cohen,* 95 Ariz. 34, 386 P.2d 81 (1963), in making its award. In that case, a property owner entered into an option contract to sell thirteen lots to a developer. The owner sold six lots to the developer, who constructed and sold six houses. The seller then refused to convey the remaining seven lots. The court found that "under the facts of this case, lost profits, if they could be proven, were the proper measure of plaintiff's damages and the trial court was thus justified in considering the evidence relating thereto." 386 P.2d at 82. We agree with the trial judge, a distinguished former justice of the Colorado Supreme Court, that Colorado would follow this rule in cases in which the special nature of the damages is properly established.

■ The more difficult question is whether Red Lion offered sufficient proof to provide a basis for an award of lost profits. Lost profit awards in Colorado are not permitted if either the amount of the profits that would have been earned or the fact that the plaintiff would have earned them is too speculative to determine. *Boyle v. Bay,* 81 Colo. 125, 254 P. 156, 158–59 (1927); *Colorado National Bank v. Ashcraft,* 83 Colo. 136, 263 P. 23, 25 (1927). However, once the loss of profits is shown to be attributable to the breach, recovery will not be denied simply because the amount of profit lost is difficult to ascertain. *See Colorado National Bank v. Ashcraft,* 263 P. at 25; *Donahue v. Pikes Peak Automobile Co.,* 150 Colo. 281, 372 P.2d 443, 446–47 (1962); *Uinta Oil Refining Co. v. Ledford,* 125 Colo. 429, 244 P.2d 881, 885 (1952).

Testimony at trial established that Red Lion had adequate financing, equipment,

and personnel to complete the construction and resale of the homes, that Red Lion was an experienced tract home developer, that past experience and rudimentary market analysis indicated the homes would have sold easily, and that past experience indicated Red Lion would have earned a profit on the construction and sale of the homes. The trial court concluded that Red Lion reasonably could have been expected to earn a profit on each of the 92 houses it would have built.[2]

Most of Red Lion's evidence on lost profits came in the form of the testimony of its president and part-owner, Malcolm Guthrie, whom the court specifically found to be credible. No documentary evidence was produced. The trial court based its award primarily on Guthrie's testimony concerning Red Lion's ability to build the homes, the type of homes it would build, the marketability of the homes, and the potential profit Red Lion would earn upon selling the homes.

Although Colorado courts prefer documentary evidence whenever its use is practicable,[3] they have upheld loss of profit verdicts that were based on undocumented testimony.

"[T]he parties are in disagreement as to whether the proof offered with regard to [plaintiff's] loss of profits was sufficient to comply with the rule of certainty required by Lee v. Durango Music, *supra*. [Plaintiff] testified as to the costs of his business and his gross sales. From this testimony, the jury could arrive at a net profit figure. Although there was some uncertainty in these figures, such uncertainty is not grounds for denying recovery of damages .... Nor do we think that [plaintiff's] case should fail because

he, alone, testified as to his loss. Under the circumstances before us, an injured party is competent to testify to his own loss."

*Power Equipment Co. v. Fulton*, 32 Colo. App. 430, 513 P.2d 234, 237 (1973). *See also Colorado National Bank v. Ashcraft*, 83 Colo. 125, 263 P. 23 (1927) (court properly could determine profit lessee would have earned raising crops from lessee's testimony as to lessors' representations of amounts harvested in previous years); *cf. Peterson v. Colorado Potato Flake & Manufacturing Co.*, 164 Colo. 304, 435 P.2d 237 (1967) (testimony as to how many potatoes in prior batch were graded U.S. No. 2 Grade or better obligated trial court to "estimate and approximate" how many in a later, ruined batch would have been so graded and to award damages based on that approximation). Colorado cases also permit undocumented testimony to aid in establishing loss of future profits in tort cases if the testimony is sufficiently credible and detailed.

"Plaintiff, as we have said, offered evidence of his loss of earnings and profits during the period that he was obliged to remain inactive in his business because of the injuries incurred. It is true that he did not produce books of account or otherwise establish by records the exact amount of his losses, but he did state the basis of the computation thereof ....

Plaintiff's evidence as to his business losses resulting from his inability to attend thereto, although concededly an approximation thereof, was competent evidence to aid the jury in estimating a fair and just compensation for losses occasioned by the injury."

*Heckman v. Warren*, 124 Colo. 497, 238 P.2d 854, 861 (1951). *Accord Trujillo v. Wilson*, 117 Colo. 430, 189 P.2d 147, 149–50 (1948)

---

**2.** The trial court awarded 14% (the lowest profit figure in evidence) of $21,000 (the lowest home price in evidence) for each of the 92 houses in order to avoid speculating whether a higher profit would have been earned or higher priced homes would have been built.

**3.** In *Lee v. Durango Music*, 144 Colo. 270, 355 P.2d 1083 (1960), the court reversed an award of lost profits resulting from a claim of interference with business. The plaintiff had testified

to his anticipated gross profits but had provided no supporting books or records. The court held that only net profits were compensable, and it expressed a strong preference for the use of documentary evidence in establishing those profits. The court found that the plaintiff's undocumented testimony as to gross profits gave the jury no reliable basis for determining the amount of net profits lost.

(self-employed plaintiff's undocumented testimony as to cost of hired help and prior profits earned admissible not as a measure of damages but as an aid in estimating fair compensation for the value of plaintiff's time).

We do not think *Gilmore v. Cohen* is inconsistent with the holding in these cases. In that case the Arizona Supreme Court upheld the trial court's refusal to award lost profits because the plaintiffs had failed adequately to prove the amount of profit that they would have earned building and selling houses. The evidence consisted entirely of the plaintiffs' own testimony; no documentary proof was introduced. The Arizona court characterized testimonial evidence in cases of future lost profits as inherently weak. 386 P.2d at 83. However, the court commented on the evidence as follows:

"The plaintiffs seemed uncertain that they had ever shown a profit from the operation or that future profits were likely to accrue. Mrs. Gilmore, for example, testified as follows:

'A  Well, the first three we didn't make any on.  The fourth we made some on.

'Q  How much did you make on the fourth one?

'A  Oh, gosh.

'Q  Do you have that?

'A  I don't have that information with me.'

She later testified to the cost and selling price of all the houses, but made several conflicting statements and several which were at odds with her husband's testimony on the same subject.

.      .      .      .      .

"In short, we are not convinced that the evidence concerning damages was calculated to inspire confidence in the trial judge, and his conclusion that the amount was not established with reasonable certainty is justified on the record."

*Id.* In the instant case the testimony, while undocumented, was unchallenged, specific, and consistent. Guthrie's testimony established sufficient profit history and profit potential to "inspire confidence in the trial judge."

 Here Red Lion's evidence, though testimonial, was sufficiently detailed and credible to provide a basis from which the trier of fact could determine the amount of damage suffered by Red Lion. Furthermore, Republic failed to challenge this testimony or to introduce conflicting evidence on the profits measure, despite warnings from the trial court that it would apply this measure. Though less than ideal, the testimony was sufficient to support the trial court's ruling.

AFFIRMED.