## No. 17,558.

R. M. MARVIN *v.* PUEBLO DAIRYMEN'S COOPERATIVE, INC.

(284 P. [2d] 238)

Decided May 31, 1955. Rehearing denied June 20, 1955.

602

Messrs. SEAVY & SEAVY, for plaintiff in error.

Messrs KOPERLIK & ALTMAN, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

DEFENDANT in error corporation was organized under the provisions of Article 2, chapter 106, '35 C.S.A., for the orderly cooperative marketing of agricultural products, and membership therein is represented by stock certificates. On December 1, 1941, plaintiff in error, designated herein as defendant, as a member stockholder of plaintiff corporation, entered into a written agreement on a form prepared and used by plaintiff corporation whereby he agreed to consign or deliver to the association as per its directions all milk or cream produced by or from the cows owned and controlled by him, except such as might be required for his home or farm use. Sections 7 and 9 of the marketing agreement are as follows:

"7. It is understood by the parties hereto that in the event of the breach of this contract by the Producer the damages that would accrue to the Association on account thereof would be difficult of ascertainment and also on account of the difficulty that would be experienced by the Association in ascertaining the amount of milk and/- or cream sold by the Producer in violation of the terms of this agreement in the event of its breach, the Producer agrees to pay the Association as liquidated damages for

the breach hereof the sum of five dollars ($5.00) for each cow owned or controlled by the Producer at the time of the breach."

"9. After this contract has been in full force and effect for one year, either party hereto may cancel this contract on May 1st of any year thereafter by notifying the other party in writing of his or its intention, such notice to be given during the month of March immediately prior to the effective date of cancellation. If neither of the parties cancels this agreement on May 1st of any year, as aforesaid, it is hereby mutually agreed that that fact shall constitute conclusive evidence that the parties hereto have renewed this contract for another year."

It is undisputed that defendant had twenty-eight milk cows; that from December 1, 1941, to December 16, 1952, he delivered all the milk he produced to plaintiff except such as was needed for household use; that on December 16, 1952, he stopped delivering milk to plaintiff, and upon being served with a copy of the temporary restraining order, he again commenced delivering all of his milk to plaintiff.

May 5, 1953, plaintiff filed its complaint in the district court of the County of Pueblo, alleging therein the breach of the agreement by defendant; that under the provisions of section 32, chapter 106, '35 C.S.A., that in the event of a breach or threatened breach of the marketing agreement by a member, the Association shall be entitled to an injunction to prevent the further breach of the contract and to a decree of specific performance thereof, and that pending the adjudication of the action, plaintiff is entitled to a temporary restraining order and preliminary injunction against the member; it also prayed for liquidated damages in the sum of $140.00; and that on final hearing the temporary injunction be made permanent.

On May 5, 1953, the court entered a temporary restraining order enjoining defendant from selling milk or cream produced by him to anyone other than plaintiff.

November 18, 1953, a preliminary injunction was issued to the same effect as the restraining order and provided that the preliminary injunction would be in full force and effect until determination of the action upon the merits, or until further order of the court. December 1, 1953, defendant filed his answer, admitting the corporate capacity of plaintiff, and that he entered into the marketing agreement, a copy of which was attached to the complaint, and denied the other allegations of the complaint. For further answer, he moved that the action be dismissed, because the complaint failed to set forth facts sufficient to entitle plaintiff to relief. For a third and separate defense, alleged violation of the terms of the agreement by plaintiff on account of its purchasing milk outside of the Pueblo area, thereby causing a surplus of milk, which, in turn, reduced the price of milk bought by plaintiff from producers; that on January 25, 1953, defendant notified plaintiff that he did not intend to deliver or sell any more milk to plaintiff; that on account of said refusal, plaintiff was entitled to a judgment against him in the sum of $140.00, representing $5.00 per cow as provided in the agreement; and finally, by reason of the temporary restraining order and preliminary injunction, compelling defendant to sell milk and cream to such places as plaintiff might direct, he was damaged in the sum of $1,500.00, and asked for judgment in that amount less $140.00, or a total of $1,360.00.

Plaintiff replied to the counterclaim, admitting that it was entitled to a judgment against defendant in the sum of $140.00, and denied all other allegations of the answer.

The minutes of plaintiff's board of directors, dated December 23, 1952, by agreement of counsel, were admitted in evidence, as well as the minutes of the board dated January 25, 1953. Defendant, at the trial on the merits, testified that in complying with the temporary restraining order he had received a lesser price for his milk that he otherwise would have, which amounted to

a difference of $1,400.00; that on January 25, he attended a meeting of plaintiff's association and at the meeting advised plaintiff that he was "staying out until things were straightened up." He further testified that he stopped delivering to plaintiff on May 1, 1954.

August 17, 1954, the court entered an injunction and judgment finding that defendant, by written notice given plaintiff during the month of March, 1954, terminated and cancelled the marketing agreement between plaintiff and defendant as of May 1, 1954, and further found and ordered that the preliminary injunction granted on November 8, 1953, was in full force and effect until May 1, 1954, and that plaintiff recover damages in the sum of $140.00 from defendant; that defendant recover no costs or damages against plaintiff on his counterclaim.

For some reason, apparently because other member producers were not delivering all of their milk to it, the board of directors of the association, at its annual meeting on December 23, 1952, discussed the situation as is disclosed by the minutes of said meeting that were admitted in evidence, which shows the following:

"R. F. Lamons moved we accept checks from members at $5.00 per cow for those who are now shipping to Beatrice. Gist seconded. Passed.

"Wyman is to send letters to those members to either send in a check or appear at a hearing.

"Wiley moved we return $5.00 and take the share of stock belonging to members jumping the contract after a hearing is held or check is received. Seconded by Davis. Passed."

According to this resolution of the board of directors a meeting was called for January 25, 1953, and a hearing for producers who "jumped their contracts," and the minutes of that meeting disclosed the following:

"The meeting of the Pueblo Dairymen's Cooperative was called to order by the President, J. A. Bergin.

"Hearing for producers who jumped their contracts.

" * * * 11. Russell Marvin—staying out."

■ The latter minutes showed definitely that defendant Marvin was staying out. By paragraph 9 of the agreement, hereinbefore set out, it was provided that on May 1 of any year after the contract has been in force for one year, either party may cancel the contract by notifying the other party in writing of such intention, and that the notice be given during the month of March immediately prior to the effective date of cancellation. This provision is clearly for the purpose of giving plaintiff at least thirty days notice within which to make other arrangements to procure the milk it would fail to get from the member cancelling out. It is undisputed, and fully disclosed by the minutes of the board of directors, that on January 25, 1953, plaintiff had notice that defendant was no longer going to deliver the milk produced by him to plaintiff. What could be a more effective notice for the termination of the contract as of May 1, 1953, than is disclosed by defendant's testimony and the minutes of the directors' meeting? This was actual knowledge, and it superseded any other requirement of notice. It was a fact known at that time by both parties to the agreement; therefore, with this knowledge, plaintiff did not need a further formal notice of something it already knew. The meeting on that date was for the very purpose of a hearing as to this particular question as to who was continuing under the contract or who was dropping out. Plaintiff, having called a meeting for that purpose, received the information or notification at that time, it is not now in any position to claim that it did not have notice, and that the contract coninued to May 1, 1954, when in fact it was terminated by the action of both parties as of May 1, 1953.

■ At the time of this meeting plaintiff knew of its statutory right to an injunction provided solely for its benefit; however, it voluntarily took the action disclosed by the minutes of its board of directors' meeting on December 23, 1952, and thereby waived any right it had to an injunction against defendant. This voluntary

choice and action by plaintiff was the very essence of the waiver. It is obvious that only the contracts made with its members could be enforced by plaintiff, and defendant was no longer a member after his stock "was lifted" according to the resolution above quoted, after defendant "had jumped" the contract and a hearing held thereon.

 The restraining order and injunction entered against defendant herein were, under the facts disclosed and not denied, wholly unwarranted, and since there is no evidence contradictory of defendant's statement that he was damaged in the sum of $1,400.00 by reason of having to take less for his milk under the compulsory orders of sale, he is entitled to judgment in that amount.

 As remedies for the breach of these marketing contracts, the statute provides that the by-laws or the marketing contract may fix as liquidated damages specific sums to be paid by the members or stockholders to the association upon the breach by him of any of the provisions of the marketing contract regarding the sale or delivery or withholding of products. The marketing agreement here involved, by section 7, hereinbefore set out, provides that because of the difficulty of the ascertainment of the damage that would accrue to the association, and also the difficulty in ascertaining the amount of milk sold by the producer in violation of the terms of the agreement, the producer will pay the association as liquidated damages for the breach thereof the sum of $5.00 for each cow owned or controlled by the producer at the time of the breach. The term "liquidated damages" indicates the amount which the contracting parties have agreed was to be in satisfaction on account of the breach. The amount thus agreed upon is enforceable, and if the words "liquidated damages" mean anything, the ordinary and accepted meaning would be that upon the payment or collection of the amount specified would put an end to all claims in connection therewith, and the matter of the right to a restraining order or injunc-

tion against the producer would depend entirely upon the conditions of the marketing agreement. It is to be remembered that in this case, the producer agreed to deliver to the association all milk or cream produced from the cows owned by him, except for household use. The agreement did not provide that such delivery was for any specifed period of time. Certainly the producer had a right, at least after the contract was in existence and had been performed for one year, to cancel or be relieved from the agreement upon certain conditions therein provided, therefore the cases of *Rifle Potato Growers Co-operative Association v. Smith,* 78 Colo. 171, 240 Pac. 937, and *Monte Vista Potato Grower's Cooperative Ass'n. v. Bond,* 80 Colo. 516, 252 Pac. 813, upholding an injunction against a producer are not in point, because in the Rifle Potato Growers case the producer sold some of his product to another concern, and in the Monte Vista Potato Grower's case the producer agreed to sell all of the potatoes produced by him during the year 1923 to 1927 inclusive. Therefore it can readily be seen that the associations were entitled to injunctive relief or specific performance of the contract. We believe, and so hold, that under the marketing agreement in the instant case, the marketing association had no further remedy beyond the stipulated amount for liquidated damages, because the producer was not bound as to any specified time and did deliver and perform under the contract for a period of eleven years and exercised his right to quit and complied with the terms of the agreement in connection therewith.

In accordance with the views herein expressed, the judgment is reversed and the cause remanded with directions to reinstate defendant's counterclaim and enter judgment thereon in the amount indicated.