No. 23777.

Martin Larson, Jr., individually and as Trustee of W. M. Richardson, Martin L. Larson and Leroy Larson; and W. M. Richardson, Martin L. Larson and Leroy Larson v. American National Bank of Denver, duly appointed Administrator C.T.A. of the Estate of William J. Hewitt, deceased, and Thunderbird Industries, Inc., a corporation.

(484 P.2d 1230)

Decided May 10, 1971.

Yegge, Hall & Evans, Robert S. Treece, for plaintiffs in error.

Irving I. Oxman, P.C., Arthur M. Frazin, for defendant in error American National Bank of Denver.

Holme, Roberts and Owen, Richard L. Schrepferman, for defendant in error Thunderbird Industries, Inc.

*In Department.*

Opinion by Mr. Chief Justice Pringle.

This is an action to recover attorney's fees. The writ of error is brought by plaintiff in error, Larson, from a judgment in favor of William J. Hewitt, who was plaintiff in the trial court. Hewitt is now deceased and American National Bank as administrator of his estate has been substituted as defendant in error. Defendant in error, Thunderbird Industries, Inc., also participated in the trial. The plaintiffs in error will be referred to collectively as Larson.

Larson owned a note in the principal amount of $110,279.56 secured by a deed of trust, which note and deed of trust were in default and subject to foreclosure. Thunderbird had an option to purchase the note and deed of trust, with a $7,000 liquidated damages clause should it fail to exercise the option. The option additionally

provided that the costs of foreclosure would be borne by the party in possession of the note. Hewitt was Thunderbird's Colorado attorney. Larson's attorney by letter authorized Hewitt to commence foreclosure in Larson's name. At the same time that he was working on the foreclosure, Hewitt also did other work for Thunderbird. Each month his bill reflected all the work performed, and he credited Thunderbird's account on a first-in-first-out (FIFO) accounting basis. At all times that Hewitt was was working on the foreclosure, Larson knew of the work, and allowed it to continue while Larson was in possession of the note.

Thunderbird chose not to purchase the note, and paid the $7,000. Hewitt went back over his bills, figured out how much he had charged Thunderbird for his work on the foreclosure, and changed his account with Thunderbird to credit that amount to other work. Hewitt then sent Larson a bill for professional services rendered pertaining to the foreclosure. Larson refused to pay Hewitt for his legal services, and this suit resulted.

Trial was to the court, and judgment was entered in favor of Hewitt in the amount of $6,766.08, plus costs. Larson raises three allegations of error, namely: (1) That the trial court erred in finding a contractual relationship between Larson and Hewitt, (2) that even if there were a contract, the trial court erred in allowing Hewitt to charge Larson for work Thunderbird had already paid for, and (3) that the trial court erred in holding that the $7,000 Thunderbird paid to Larson was the maximum liability Thunderbird had. Hewitt brings cross-error from the trial court's finding that no interest would accrue until judgment as this claim was unliquidated. On all points we find no error, and affirm.

I.

Larson first argues that the trial court erred in finding an implied contract in fact between Hewitt and himself. We disagree. In his findings of fact and conclusions of law, the trial judge refers to Plaintiff's (Hew-

itt) Exhibit "O" dated May 18, 1965. This is the agreement between Thunderbird and Larson wherein Thunderbird bought the option to purchase the note. Paragraph seven reads:

"7. It is further agreed that if the note which is subject hereof is in default by the maker than [sic] either party hereto may forclose [sic] it, *provided the foreclosing party is in possession* of said note and after notifying the other party hereto, in the name of Martin Larson Jr., Trustee at the foreclosing parties [sic] *own expense however.*" [Emphasis added.]

In a letter dated July 30, 1965, Larson's attorney specifically authorized Hewitt to commence foreclosure in Larson's name. Another instrument designated as Exhibit "P" was signed by the parties in which it was agreed that Larson should begin the foreclosure and that his expenses for the same would be reimbursed by Thunderbird if they purchased the note.

The trial court found that when construing together the various instruments signed by the parties it became clear that Larson, as the holder of the note and deed of trust, was to pay for the foreclosure and be reimbursed by Thunderbird if Thunderbird finally purchased the note. That finding is clearly supported by the record.

The trial court further found that Larson took an active part in the foreclosure proceedings instituted by Hewitt as counsel of record, and, in fact, testified therein; that as part of that testimony he said that Hewitt was his attorney; that Larson requested information and professional advice from Hewitt relating to the foreclosure, and Hewitt supplied the same; and that Larson made claim for his attorney's fee in the foreclosure proceedings. The trial court further found that Larson had knowledge that their agent had authorized Hewitt to prosecute the foreclosure in Larson's name and on his behalf.

Based on these findings, the trial court con-

cluded that there was an implied contract on the part of Larson to pay Hewitt the reasonable value of his services. The findings of fact are supported by the record and we find no error of law in the conclusion reached by the trial judge. Although mere knowledge alone of work being performed for one's benefit does not of itself imply a promise to pay, nevertheless, where one accepts such services and by his actions indicates that he ratifies the employment of the person rendering the services, an implied promise to pay the reasonable value of the services arises. *Emblem v. Bicksler*, 34 Colo. 496, 83 P. 630. *See Annot.* 78 A.L.R.2d 318, 324, 329, 339. Such was the case here.

II.

■ Larson's second argument is that even if there is a contract, Hewitt had already been paid by Thunderbird and cannot recover from Larson. We disagree. Although Hewitt did use a FIFO method of accounting and did in fact credit payments made by Thunderbird for work he did on the foreclosure, nevertheless, once it became certain that Thunderbird was not going to purchase the note, Hewitt was obligated to correct his books and credit Thunderbird's account for payments previously allocated to the foreclosure work. He did so and accordingly has not been paid by Thunderbird. As the foreclosing party was by the contract responsible for the cost of the foreclosure in the event the option was not exercised, Hewitt properly billed Larson for the full amount.

III.

■ Larson's final argument is that the trial court erred in limiting damages against Thunderbird to the $7,000 liquidated amount. We disagree. Thunderbird properly points out that when there is a liquidated damages clause, and there is a breach, once the liquidated amount is paid and accepted, it constitutes the total amount of damages allowable. *Marvin v. Pueblo Dairymen's Cooperative*, 131 Colo. 601, 284 P.2d 238.

430

## IV.

As a matter of cross-error, Hewitt argues that he was entitled to prejudgment interest as this was a liquidated claim. We have held that where a claim is unliquidated interest is not permitted before judgment. *Hendrie v. Board of County Commr's.*, 153 Colo. 432, 387 P.2d 266. Under the circumstances of this case, the amount due Hewitt did not become liquidated until such time as the court determined the reasonableness of the amount of his claim. *Hunter v. Wilson,* 147 Colo. 36, 362 P.2d 553.

The judgment of the trial court is affirmed.

MR. JUSTICE HODGES, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.