**PORTERCARE ADVENTIST HEALTH SYSTEM, d/b/a Porter Hospital, Plaintiff–Appellee,**

v.

**Robert T. LEGO, Defendant–Appellant.**

No. 09CA0900.

Colorado Court of Appeals, Div. I.

Sept. 16, 2010.

As Modified on Denial of Rehearing Oct. 28, 2010.

§ 24–51–1105, C.R.S.2009.

McConnell Fleischner Houghtaling & Craigmile, LLC, Traci L. Van Pelt, Troy R. Rackham, Sara M. Cantrick, Denver, Colorado, for Plaintiff–Appellee.

Russel Murray III, PC, Russel Murray III, Lone Tree, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Robert T. Lego, appeals the judgment entered on a jury verdict finding that he is liable to plaintiff, Portercare Adventist Health System (the hospital), on its claim for breach of a contract implied in fact to pay for medical services and care the

hospital provided to his wife (Bernadette F. Lego). He also appeals the district court's order requiring him to pay the hospital's attorney fees incurred during the entirety of the district court proceedings.

We agree with Mr. Lego's contention that the district court erred in not granting him judgment on the hospital's claim based on the statute of limitations. The hospital's claim was subject to the three-year statute of limitations generally applicable to contract actions, section 13–80–101(1)(a), C.R.S.2010, not the six-year statute of limitations applicable to contract actions in which the damages are "liquidated" or unliquidated but "determinable," section 13–80–103.5(1)(a), C.R.S. 2010. Because it is undisputed that the hospital commenced this case more than three years after its claim accrued, Mr. Lego is entitled to judgment on the claim as a matter of law.

In light of this determination, and because of other infirmities in the district court's order awarding the hospital its attorney fees, we vacate that order and remand for the court to reconsider the hospital's motion for fees.

## I. Background

On August 18, 2001, Ms. Lego was admitted to the hospital, where hospital staff treated her for several weeks. In late September, Ms. Lego's insurer indicated that it believed she no longer needed the level of care provided by the hospital and therefore would not pay for her to stay at the hospital after October 1. The written notice from the insurer informed Ms. Lego that if she chose to remain at the hospital, she would "be financially responsible for all costs of the services and care" provided after October 1.

Ms. Lego unsuccessfully challenged the insurer's determination through administrative channels and in court. She remained at the hospital until November 9, 2001. Though the hospital later claimed that hospital personnel told the Legos repeatedly that they would be responsible for paying for services provided after October 1 if Ms. Lego remained at the hospital, Mr. Lego maintained that he refused to agree to be financially responsible for any such services.

The hospital billed a total of $453,084 for Ms. Lego's stay. Her insurer paid $301,570.99. In November 2001, the hospital demanded that Ms. Lego pay the remaining bill of $144,044.36. The Legos refused.

In April 2005, the hospital filed a complaint against Ms. Lego's estate (Ms. Lego had died in the interim) and Mr. Lego stating a single claim for "money owed." A few months later, the hospital filed an amended complaint asserting the same claim. Therein, the hospital alleged that the parties' conduct—specifically, (1) Ms. Lego's decision to remain at the hospital after her insurance coverage ceased, knowing that the hospital would charge her for services provided after October 1, and (2) the hospital's provision of services after that date—created a contract implied in fact. The amended complaint sought $144,044.36, the amount billed but unpaid, in damages from the estate and Mr. Lego jointly and severally. (The district court dismissed the claim against the estate for lack of subject matter jurisdiction, a determination from which the hospital has not appealed.)

Defendants moved to dismiss the amended complaint on the ground the hospital's claim was barred by the three-year statute of limitations, section 13–80–101(1)(a). In response, the hospital argued that, because it sought a specific amount of money, the amount of its claim was "liquidated" or "determinable" within the meaning of the six-year statute of limitations, section 13–80–103.5(1)(a), and therefore the claim was timely. The district court denied the motion to dismiss, concluding that the amended complaint stated a claim for breach of contract, "not a claim in quantum meruit," and it could not determine at that stage whether the amount of the claim was liquidated or determinable within the meaning of section 13–80–103.5(1)(a).

Defendants again raised their statute of limitations defense in a motion for summary judgment. The gist of their argument was that recovery under a claim for breach of a contract implied in fact is the reasonable value of the services provided, and no document evidencing any contract purported to

show either what that reasonable amount was or how it could be readily calculated. The district court denied the motion on the basis of a hospital representative's affidavit testifying to the amount of the bill and that the fees charged were in line with market rates. The district court concluded that this rendered the amount of the claim "liquidated" for purposes of the six-year statute of limitations.

Before trial, Mr. Lego designated an expert to testify as to the reasonableness of the hospital's charges. The hospital moved to strike the designation, arguing, in part, that the issue of the reasonableness of its charges was irrelevant because it was requesting an award of a liquidated or determinable amount of money. Agreeing with the hospital's argument, the district court granted the hospital's motion, and ruled that "[t]he issues of reasonableness and necessity of care rendered as well as the billing practices of [the hospital] are precluded."

When the hospital finished presenting its evidence at trial, Mr. Lego moved for a directed verdict, arguing, among other things, that the hospital had failed to present evidence of the reasonable value of its services. The district court denied the motion.

In instructing the jury on the hospital's breach of implied contract claim, the district court used a modified version of CJI–Civ. 30:14 (2010), deleting, as relevant here, the element that the hospital prove the reasonable value of its services, and substituting therefor an element that the hospital must prove "[t]he total of the rendered medical services and delivered supplies." It further instructed the jury that if it found in the hospital's favor on liability, it should "assess as its actual damages the amount of the medical services rendered and supplies delivered." Mr. Lego objected to these instructions because they omitted the requirement of proof of the reasonable value of the services.

The jury found in the hospital's favor and awarded $144,044.36, the full amount sought

by the hospital, as damages. Mr. Lego filed a motion for judgment notwithstanding the verdict, again arguing that the hospital had filed its claim after the expiration of the statute of limitations. The district court denied that motion without explanation. The court subsequently added $105,371.13 in prejudgment interest and $7,437.65 in costs to the judgment.

The hospital moved for an award of its attorney fees under section 13–17–102, C.R.S.2010. It argued that Mr. Lego's defense of the action was substantially frivolous, groundless, and vexatious. The court found that Mr. Lego had unnecessarily expanded the proceeding, and awarded the hospital $156,656.50, the total amount of attorney fees the hospital had incurred in the case, less some minor charges.

As noted, Mr. Lego appeals from both the judgment and the order awarding attorney fees.

## II. The Statute of Limitations

Mr. Lego raises several contentions challenging the judgment. We need not address all of them, however, because we conclude that his contention that the hospital's claim was barred by the three-year statute of limitations is correct and dispositive.

■ The hospital concedes that its sole claim for breach of a contract implied in fact accrued in November 2001.[1] Therefore, if the three-year statute of limitations rather than the six-year statute of limitations applies to the hospital's claim, it was barred. We review de novo the issue of what statute of limitations applies to a particular claim, at least where, as here, all facts relevant to that issue are undisputed. *See Hurtado v. Brady,* 165 P.3d 871, 873 (Colo.App.2007).

Section 13–80–101(1)(a) provides that "[a]ll contract actions . . . , except as otherwise provided in section 13–80–103.5," must "be commenced within three years after the cause of action accrues . . . ." A claim based on an implied contract is subject to this provision.

---

1. In its Petition for Rehearing, the hospital contends that the issue of when its claim accrued is indeed disputed. On page 17 of its Answer Brief on appeal, however, the hospital stated: "Port-

er's claim accrued in November 2001." The hospital did not argue that a different accrual date applied depending on which statute of limitations applied.

*See CAMAS Colorado, Inc. v. Bd. of County Comm'rs,* 36 P.3d 135, 139–40 (Colo.App. 2001); *see also Rotenberg v. Richards,* 899 P.2d 365, 367–68 (Colo.App.1995).

But section 13–80–103.5(1)(a) provides an exception to the three-year limitations statute for a contract claim if, as relevant here, it is one "to recover a liquidated debt or an unliquidated, determinable amount of money. . . ." For such a claim, the statute of limitations is six years.

Divisions of this court have held that a claim is for a "liquidated debt" or "determinable" sum for purposes of section 13–80–103.5(1)(a) "if the amount due is capable of ascertainment by reference to an agreement or by simple computation." *Rotenberg,* 899 P.2d at 367; *accord Interbank Investments, L.L.C. v. Vail Valley Consol. Water Dist.,* 12 P.3d 1224, 1230 (Colo.App.2000); *Tafoya v. Perkins,* 932 P.2d 836, 838 (Colo.App.1996); *Fishburn v. City of Colorado Springs,* 919 P.2d 847, 849 (Colo.App.1995). And, a debtor's dispute of or defenses against such a claim or the need to refer to some fact outside the agreement to determine the amount owed does not necessarily render the damages unliquidated or indeterminable. *Interbank Investments,* 12 P.3d at 1230; *Fishburn,* 919 P.2d at 849–50; *Rotenberg,* 899 P.2d at 367.

▮ These rules, however, must be understood in light of the contexts of the cases applying them. A sum is not liquidated or determinable merely because a fact finder, armed with information relevant to determining the amount owed, can arrive at a specific amount of damages. After all, such a determination is possible in every contract action in which the amount claimed is not speculative. Rather, a sum is liquidated or determinable within the meaning of section 13–80–103.5(1)(a) only where the agreement sets forth an amount owed or a formula for calculating an amount owed. *See, e.g., Interbank Investments,* 12 P.3d at 1227, 1230 (written agreement stated that direct costs, demon-

strated by invoices and verified by water district imposing tap fees, would be paid by the developer); *Fishburn,* 919 P.2d at 848–50 (alleged contract—an employment manual—stated that certain employees would be compensated at a rate of 25% of base hourly pay); *Rotenberg,* 899 P.2d at 366, 367–68 (written agreement called for payment at a rate of $100 per hour; noting, by way of example, that a price is ascertainable from the terms of the contract where the contract fixes a per unit price, even though the number of units necessarily performed is disputed). Absent such a provision, section 13–80–103.5(1)(a) does not apply. *See Union Pac. R.R. Co. v. Certain Underwriters at Lloyd's,* 37 P.3d 524, 525–26 (Colo.App.2001); *Tafoya,* 932 P.2d at 838 ("Because the amount due from the accounting was not capable of ascertainment by reference to the partnership agreement or by a simple computation derived from the agreement, [section 13–80–103.5(1)(a) ] does not apply.").[2]

▮ In this case, no provision of any alleged agreement sets forth an amount owed or a formula (or other readily calculable means) for determining the amount owed. The hospital did not allege a contract arising from a document. Rather, as noted, it alleged a contract arising from the parties' conduct. *See Agritrack, Inc. v. DeJohn Housemoving, Inc.,* 25 P.3d 1187, 1192 (Colo. 2001) (" '[A] contract implied in fact is based on the conduct of the parties to the agreement and it is the conduct itself which establishes the agreement.' ") (quoting *Osband v. United Airlines, Inc.,* 981 P.2d 616, 621 (Colo.App.1998)).

The hospital's position that the amount owed is readily determinable is based chiefly on the bill it sent to Ms. Lego.[3] But that bill was not the parties' agreement; it was merely a statement of charges—the hospital's assessment of what Ms. Lego owed under the alleged agreement.

The district court's rulings rejecting Mr. Lego's statute of limitations defense were

---

**2.** In the case of a formula, reference to outside sources to ascribe a quantity to the variables does not necessarily render the amount indeterminable for purposes of section 13–80–103.5(1)(a). *See Rotenberg,* 899 P.2d at 368.

**3.** The hospital does not appear to defend the district court's express ruling that the amount was a "liquidated debt."

based on a misperception of the nature of a claim based on a contract implied in fact, one shared by the hospital. The district court concluded, and the hospital maintains, that a claim based on a contract implied in fact is not one sounding in quantum meruit. That is incorrect.

 Quantum meruit, which literally means "as much as he deserved," is a theory of recovery employed to prevent one party from benefitting at the expense of another where there is no express contract for payment. *See Davies v. Olson,* 746 P.2d 264, 268–69 (Utah Ct.App.1987); *Eaton v. Engelcke Mfg., Inc.,* 37 Wash.App. 677, 681 P.2d 1312, 1314 (1984); 1 Dan B. Dobbs, *Law of Remedies* § 4.2(3), at 583 (2d ed.1993); Candice S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation,* 35 Am. U.L.Rev. 547, 550 (1986). It has two distinct branches—contract implied in fact and unjust enrichment. *See Mogavero v. Silverstein,* 142 Md.App. 259, 790 A.2d 43, 52 (2002); *Davies,* 746 P.2d at 269; Dobbs § 4.2(3), at 583; Kovacic at 553.[4]

 Where the parties have not expressed the price to be paid under a contract implied in fact, the amount of recovery is the reasonable market value of the services or goods provided. *See Larson v. Am. Nat'l Bank,* 174 Colo. 424, 428–29, 484 P.2d 1230, 1232 (1971); *McDonald v. Thibault,* 84 Colo. 470, 471, 271 P. 183 (1928); *Barry v. Pac. West Constr., Inc.,* 140 Idaho 827, 103 P.3d 440, 447 (2004); *Davies,* 746 P.2d at 269; *Young v. Young,* 164 Wash.2d 477, 191 P.3d 1258, 1262–63 (2008); *see also Rotenberg,* 899 P.2d at 368 (a claim for quantum meruit seeks reasonable compensation for the services rendered); Dobbs § 4.2(3), at 583; Kovacic at 556. This measure of recovery is reflected

in Colorado's pattern jury instruction setting forth the elements of a claim for breach of a contract implied in fact, CJI–Civ. 30:14 (2010).

Several courts have found a contract implied in fact where a patient accepts medical services understanding that those services must be paid for by the patient, and have held that the measure of recovery is the reasonable value of those services. *See, e.g., Providence Hosp. v. Dorsey,* 634 A.2d 1216, 1218–19 (D.C.1993); *Huntington Hosp. v. Abrandt,* 4 Misc.3d 1, 779 N.Y.S.2d 891, 892 (N.Y.App.Term 2004); *Porter v. McPherson,* 198 W.Va. 158, 479 S.E.2d 668, 673–74 (1996). This is such a case. Though the hospital disclaims any intent to recover the reasonable value of goods and services provided, that is the measure of recovery to which it is limited as a matter of law in the absence of an agreement as to price or a formula for calculating the price in a document evidencing an agreement.[5]

Therefore, Mr. Lego was correct in arguing repeatedly in the district court that the hospital was required to prove the reasonable value of its services. To be sure, the hospital's bill, together with the testimony of its account manager as to prevailing market rates, was evidence of the reasonableness of its charges. *See A.J. v. State,* 677 So.2d 935, 937 (Fla.Dist.Ct.App.1996) ("[a] medical bill constitutes the provider's opinion of a reasonable charge for the services"); *St. Vincent Med. Ctr. v. Sader,* 100 Ohio App.3d 379, 654 N.E.2d 144, 146–47 (1995) (a hospital is entitled to a rebuttable presumption that the reasonable value of the services provided is its customary charge); *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.,*

---

**4.** Courts frequently, but inaccurately, refer to the unjust enrichment branch of quantum meruit as contract implied in law or quasi-contract. But recovery for unjust enrichment is not based on the existence of any contract. Rather, it is a purely equitable remedy. *Jorgensen v. Colorado Rural Properties, LLC,* 226 P.3d 1255, 1258–59 (Colo.App.2010); *see generally* Kovacic at 553–61 (discussing courts' frequent conflation of concepts in this context).

**5.** The hospital contends that the discharge notice from the insurer and the written denial of the Legos' appeal of the insurer's denial of further

coverage obligated Ms. Lego to pay "all costs of services and care," without regard to the reasonableness of the hospital's charges. But the hospital was not a party to either item of correspondence. Further, the references to "costs" are ambiguous. Does "costs" mean the hospital's costs to provide the services? Does "costs" mean the hospital's charges for those services? If the latter, as the hospital apparently contends, such "costs" clearly must be reasonable, at least where, as here, there is no prior notice of the rates charged.

832 A.2d 501, 508 (Pa.Super.Ct.2003) (how much a hospital typically receives for its services is more probative of reasonable value than its published rates); *see also Fairbanks North Star Borough v. Tundra Tours, Inc.,* 719 P.2d 1020, 1029–30 (Alaska 1986) (evidence of actual cost is evidence of reasonable value); *Providence Hosp.,* 634 A.2d at 1219 n. 7 (distinguishing quantum meruit recovery from the amount billed). But the existence of such evidence of reasonable value did not render the amount owed "liquidated" or "determinable" within the meaning of section 13–80–103.5(1)(a).

Because the hospital's recovery was limited to quantum meruit, its claim was subject to the three-year statute of limitations, not the six-year statute of limitations. *See Rotenberg,* 899 P.2d at 368; *see also Larson,* 174 Colo. at 428–29, 430, 484 P.2d at 1232–33 (where measure of recovery is reasonable value, amount is not liquidated until that value is determined by the fact finder). It follows that the hospital's claim was time barred, and that the district court therefore erred in not dismissing it. Accordingly, we reverse the judgment in the hospital's favor and remand the case for entry of judgment in Mr. Lego's favor.

### III. Attorney Fees

In awarding attorney fees to the hospital, the district court did not conclude that Mr. Lego's defense of the action was substantially frivolous or substantially groundless, apparently rejecting the hospital's contentions that it was both. However, the court concluded that an award was appropriate under section 13–17–102(4), C.R.S.2010 (allowing for an award of attorney fees if, for example, the defense to an action was, in part, "interposed for delay" or if a party "unnecessarily expanded the proceeding"), because Mr. Lego unnecessarily delayed the resolution of the case. We review that determination for an abuse of discretion. *See City of Aurora v. Colo. State Engineer,* 105 P.3d 595, 618 (Colo.2005).

The order awarding fees indicates that the court considered the hospital's success on the merits. In light of our conclusion that Mr. Lego is entitled to judgment on the merits, one basis for the court's decision is no longer viable.

The court also noted that Mr. Lego "moved on at least four separate occasions for dismissal of [the hospital's] claim based upon the statute of limitations" in deciding that Mr. Lego had unnecessarily delayed the proceeding. But our review of the record leads us to conclude that these actions were not procedurally inappropriate. Mr. Lego moved to dismiss the amended complaint, and while it is debatable whether he was entitled to prevail on his statute of limitations defense at that stage, his motion was not frivolous. In denying that motion, the court expressly left the door open to a motion for summary judgment. Mr. Lego cannot be faulted for later filing such a motion, particularly because the court should have granted it. We also perceive nothing inappropriate about Mr. Lego's post-trial motion under C.R.C.P. 59.

We are also troubled by other aspects of the district court's order awarding fees. It provides a few examples of allegedly dilatory conduct, but states that there are other, unspecified examples in the record. This failure to specify the dilatory actions hinders our review of the propriety of the order. Also, the court relied on Mr. Lego's oral motion to continue the trial, but the record shows this issue consumed only a few minutes of the parties' and the court's time. Finally, the court awarded the hospital almost all the fees the hospital had incurred in the case, but did not explain why the unnecessary delay caused by Mr. Lego justified such an award.

We therefore vacate the order awarding attorney fees to the hospital. On remand, the court may, if the hospital desires, reconsider that motion.[6] If the court does so, and if it again awards fees, it should make findings sufficient to provide meaningful appellate review, both as to the reason for the

---

**6.** There is at least a theoretical possibility that a prevailing party could have unnecessarily expanded the proceeding by its conduct. There- fore, the fact Mr. Lego has prevailed is not a per se bar to the hospital's motion.

award and the amount of the award, if any. The amount of the award should be limited to the expense actually incurred by the hospital as a result of any unnecessary delay caused by Mr. Lego.

We hasten to add that we take no position as to whether an award of attorney fees is appropriate.

### IV. Deficiencies in the Parties' Briefs

■ C.A.R. 28(a)(4) and (b) provide that each party's principal brief must contain a summary of the argument. Neither Mr. Lego's opening brief nor the hospital's answer brief complies with this requirement. Though each contains a section labeled "Summary of the Argument," Mr. Lego merely restates his contentions of error and the hospital merely repeats Mr. Lego's contentions of error, stating in purely conclusory fashion that we should reject his arguments. A proper summary should include the major points of reasoning employed as to each issue.

We also note that the font employed by Mr. Lego for footnotes in both his opening and reply briefs is too small. *See* C.A.R. 32(a)(1).

We remind counsel of their obligation to comply scrupulously with our rules of appellate procedure governing the form and content of briefs.

### V. Conclusion

The judgment is reversed and the order awarding attorney fees is vacated. The case is remanded for the entry of judgment in Mr. Lego's favor and for reconsideration of the hospital's motion for attorney fees.

Judge TAUBMAN and Judge RICHMAN concur.