2012 CO 58

**PORTERCARE ADVENTIST HEALTH SYSTEM, d/b/a Porter Hospital, Petitioner**

v.

**Robert T. LEGO, Respondent.**

**No. 10SC765.**

Supreme Court of Colorado,
En Banc.

Sept. 24, 2012.

Rehearing Denied Oct. 15, 2012.

McConnell Fleischner Houghtaling, LLC, Traci L. Van Pelt, Matthew C. Miller, Jennifer L. Ward, Denver, Colorado, Attorneys for Petitioner.

Burg Simpson Eldredge Hersh & Jardine, P.C., Diane Vaksdal Smith, Brian K. Matise, Russel Murray, III, Englewood, Colorado, Attorneys for Respondent.

Castle Stawiarski, LLC, Kimberly L. Martinez, Denver, Colorado, The Law Offices of David C. Japha, P.C., David C. Japha, Denver, Colorado, Attorneys for Amicus Curiae Colorado Creditors' Bar Association.

Greenberg & Sada, P.C., Alan Greenberg, Englewood, Colorado, Attorneys for Amicus Curiae ACA International and Associated Collection Agencies/Colorado and Wyoming, Inc.

Colorado Legal Services, Joel R. Hayes, Jr., Brandy L. Rothman, Boulder, Colorado, Attorneys for Amicus Curiae Colorado Legal Services.

Faegre & Benson, LLP, Dirk W. de Roos, Sarah L. Geiger, Denver, Colorado, Attorneys for Amicus Curiae Colorado Hospital Association.

Justice RICE delivered the Opinion of the Court.

¶ 1 In this hospital debt collection action, we interpret section 13–80–103.5(1)(a), C.R.S. (2011), and hold that its six-year limitations period applies in cases, like this one, that arise out of an implied in fact contract for liquidated medical expenses. Contrary to the court of appeals' holding in *Portercare v. Lego*, —— P.3d ——, ——, 2010 WL 3584394 (Colo.App.2010) (selected for official publication as modified), the applicability of section 13–80–103.5(1)(a) in the hospital debt context is not limited to cases where an agreement specifically sets forth an amount owed or a formula for calculating such an amount. Rather, a contract for hospital services contains a "liquidated debt" for the purposes of section 13–80–103.5(1)(a) if the amount owed is ascertainable either by reference to the agreement, or by simple computation using extrinsic evidence if necessary. *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo.App.1995) (citing Restatement (Second) of Contracts § 354 cmt. c (1981)). Here, the contract claim involves a liquidated debt because the amount owed was ascertained by adding predetermined rates for the medical services provided. We therefore reverse the court of appeals' judgment in favor of Respondent Robert T. Lego.

¶ 2 In addition, because we hold that the six-year statute of limitations applies in this instance, Petitioner Portercare Adventist Health System (Porter) timely filed its debt collection action against Lego even if the action accrued, as Lego argues, in November 2001. Therefore, we need not reach the accrual issue upon which we granted certiorari.[1] Accordingly, we reverse the decision of the court of appeals and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 On August 14, 2001, Porter admitted Lego's unresponsive wife to its emergency room. Mrs. Lego remained in the hospital until November 9, 2001. In late September of that year, the Legos' insurance provider notified Lego in writing that it would stop covering Mrs. Lego's hospital care after October 10, 2001. Lego disputed the insurer's position and refused to have his wife discharged from Porter.

¶ 4 Porter subsequently sent the Legos written notice that their insurer would stop covering Mrs. Lego's hospital care after October 10, 2001, and that the Legos would be responsible for the cost of Mrs. Lego's medi-

---

1. We granted certiorari to determine the following two issues:

    (1) Did the court of appeals improperly construe § 13–80–103.5, C.R.S. (2010), which states that "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money ..." must be filed within six years, to apply only if a written contract exists or there was an agreed upon formula?

    (2) Did the court of appeals err when it refused to remand the case to the trial court for an accrual determination when accrual was never litigated under the standard applicable to a breach of contract claim?

cal expenses after that date. On October 24, 2001, Porter's Director of Patient Access, Leslie Richard, orally notified the Legos at the hospital of their financial responsibility for Mrs. Lego's care after October 10. Richard offered Lego two brochures about patient financial responsibility. Lego declined the brochures and, despite acknowledging the insurance company and Porter's notices, he expressly and repeatedly refused to accept responsibility for any of Mrs. Lego's medical costs. He did not, however, ask the hospital to discharge Mrs. Lego. Mrs. Lego eventually left Porter on November 9, 2001. She subsequently passed away.

¶ 5 Porter received payment from the Legos' insurance company to cover Mrs. Lego's care between August 14, 2001, and October 10, 2001. Consistent with the notice it sent the Legos, the insurance company refused to pay for any of the expenses incurred after October 10, 2001. As a result, Porter sent Lego a $144,044.36 bill on November 24, 2001, for the cost of Mrs. Lego's medical services from October 11, 2001, when the insurance company ceased coverage, until Mrs. Lego's discharge on November 9, 2001. Lego refused to pay the bill.

¶ 6 In an effort to recoup the outstanding debt, Porter initiated an action for "money owed" against Lego on April 28, 2005. Lego moved the trial court to dismiss the action on statute of limitations grounds. He argued that Porter's action was for unjust enrichment with recovery in quantum meruit and was therefore barred by the general three-year statute of limitations for contract actions codified at section 13–80–101(1)(a), C.R.S. (2011). The trial court denied the motion. It found that Porter's action resulted from an implied in fact contract, not from unjust enrichment. It also found that factual questions remained as to whether the debt Porter claimed was "liquidated" or "determinable" for the purposes of the six-year statute of limitations in section 13–80–103.5(1)(a).

¶ 7 Lego renewed his statute of limitations argument in a motion for summary judgment. The trial court denied that motion as well and additionally found, without detailed analysis, that the $144,044.36 debt claimed by the hospital was "liquidated" for the purposes of section 13–80–103.5(1)(a). It accordingly applied the six-year statute of limitations contained in that section to Porter's "money owed" action.

¶ 8 The case proceeded to trial. The jury found Lego liable for breach of an implied in fact contract with Porter that arose as a result of the parties' conduct. It awarded Porter the entire debt of $144,044.36. Lego appealed the verdict to the court of appeals on numerous grounds, including that the trial court erred in applying the six-year statute of limitations to Porter's implied in fact contract claim.

¶ 9 The court of appeals reversed the trial court's finding that the six-year statute of limitations described in section 13–80–103.5(1)(a) applied to Porter's "money owed" action. It held that an amount due is "liquidated or determinable within the meaning of section 13–80–103.5(1)(a) only where the agreement sets forth an amount owed or a formula for calculating an amount owed." *Portercare*, —— P.3d at ——. The court of appeals then analyzed the implied in fact agreement between Lego and Porter and held that the contract did not set forth an amount owed, or a formula for calculating such an amount. *Id.* at ——. Accordingly, the court of appeals held that Porter's action was subject to the general three-year statute of limitations for contract actions in section 13–80–101(1)(a), rather than the six-year statute of limitations in section 13–80–103.5(1)(a). *Id.* at —— (citations omitted). The court of appeals then reversed the judgment of the trial court as a matter of law because Porter initiated its action more than three years after its implied in fact contract claim accrued in November 2001. *Id.* at ——.

¶ 10 Porter petitions this Court for certiorari review of the court of appeals' opinion. It asks us to determine whether the court of appeals improperly construed section 13–80–103.5(1)(a) when it limited that section's applicability to instances where "the agreement sets forth an amount owed or a formula for calculating an amount owed." *Id.* at ——.

¶ 11 After outlining the standard of review for statutory construction, we interpret the term "liquidated debt" in section 13–80–103.5(1)(a). We then apply our interpretation in the hospital bill context and hold that the $144,044.36 Porter claims in this breach of implied in fact contract case is a "liquidated debt." As such, we apply the six-year statute of limitations, reverse the judgment of the court of appeals, and remand for further proceedings consistent with this opinion.

## II. Standard of Review

¶ 12 Statutory construction is a question of law that we review de novo. *Spahmer v. Gullette*, 113 P.3d 158, 161 (Colo. 2005). Our primary duty in construing statutes is to give effect to the intent of the General Assembly. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008). We begin our de novo review with an analysis of the plain language of the provision. *Wolf Ranch, LLC v. Colo. Springs*, 220 P.3d 559, 563 (Colo.2009). When this language is unambiguous, we give effect to the plain and ordinary meaning of the section without resorting to other rules of statutory construction. *Stamp v. Vail Corp.*, 172 P.3d 437, 442–43 (Colo.2007). We will construe words and phrases used in a statute together and in context. *Pearson v. Dist. Court*, 924 P.2d 512, 516 (Colo.1996).

## III. Liquidated Debt

¶ 13 In general, contract actions are subject to a three-year statute of limitations. § 13–80–101(1)(a). If a contract is for a "liquidated debt" or for an "unliquidated, determinable amount," however, it falls under the six-year statute of limitations provided by section 13–80–103.5(1)(a). *See* § 13–80–101(1)(a) (contract actions subject to three-year limitations period "except as otherwise provided in section 13–80–103.5"). This Court has not previously interpreted the meaning of the terms "liquidated debt" or "unliquidated, determinable amount." This case therefore presents an issue of first impression. We begin our analysis by interpreting the meaning of the term "liquidated debt."

¶ 14 The court of appeals narrowly construed the meaning of "liquidated debt" in this case. It held that an amount due for the defendant's breach of an implied in fact contract for hospital costs is "liquidated or determinable within the meaning of section 13–80–103.5(1)(a) only where the agreement sets forth an amount owed or a formula for calculating an amount owed." *Portercare*, —— P.3d at ——. Addressing the "liquidated" portion of this holding, it appears the court of appeals will only find a "liquidated debt" where an agreement "sets forth an amount owed." *Id.*

¶ 15 We disagree with this narrow interpretation. Instead, we hold that a "liquidated debt" may be ascertained either by reference to the agreement, or by simple computation using extrinsic evidence if necessary. *See Rotenberg*, 899 P.2d at 367 (citing Restatement (Second) of Contracts § 354 cmt. c (1981)). The Colorado Fair Debt Collection Practices Act defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment." § 12–14–103(6)(a), C.R.S. (2011). A debt is "liquidated" if the amount due "is capable of ascertainment by reference to an agreement or by simple computation." *Rotenberg*, 899 P.2d at 367 (analyzing the meaning of "liquidated debt" in action to collect legal fees); *see also* Restatement (Second) of Contracts § 354 cmt. c (1981) (defining "sufficiently definite" sums due under a contract for the purposes of assessing interest as damages). Therefore, a "liquidated debt" exists if a consumer is obligated to pay either an amount stated in the agreement, or an amount capable of ascertainment by simple computation that arises out of the subject transaction.

¶ 16 A debt may be liquidated even if extrinsic evidence is necessary to compute its exact amount. *Rotenberg*, 899 P.2d at 368; *see* Restatement (Second) of Contracts § 354 cmt. c (1981) (sum due is sufficiently definite when it can be "determined from established market prices"); *see, e.g., Uhl v. Fox*, 31 Colo.App. 13, 15, 498 P.2d 1177, 1178 (1972) (contract sale price for stock was liquidated even when establishment of price depended

on extrinsic evidence). Additionally, the fact that a defendant disputes the amount in question does not affect the liquidated character of a debt. *Rotenberg*, 899 P.2d at 367.

¶ 17 We now analyze whether the implied in fact contract for medical services between Lego and Porter contains a liquidated debt.

## IV. The Implied in Fact Contract Contains a Liquidated Debt

■ ¶ 18 We hold that in the hospital services context generally, an amount owed under an agreement is a "liquidated debt" for the purposes of section 13–80–103.5(1)(a) if it is ascertainable either by reference to the agreement, or by simple computation using extrinsic evidence if necessary. *See Rotenberg*, 899 P.2d at 367 (citing Restatement (Second) of Contracts § 354 cmt. c (1981)). Porter's contract claim involves such a "liquidated debt" because the $144,044.36 Lego owed as a result of the implied in fact agreement was ascertained by simply adding predetermined rates for the medical services provided to Mrs. Lego by Porter. As such, Porter's claim is subject to the six-year statute of limitations in section 13–80–103.5(1)(a).

¶ 19 Porter's claim concerns a "debt" because Lego's acceptance of medical services rendered by Porter on Mrs. Lego's behalf created an implied in fact contract and obligated Lego to pay for those services in the event that insurance did not cover all of Mrs. Lego's medical bills. *See* § 12–14–103(6)(a) (defining "debt" in consumer context). Lego could not expect the hospital to provide free medical care, nor should the hospital be deprived of compensation for completed services. The statute governing hospital disclosures to patients supports our conclusion that Lego owed a debt to Porter because the statute uses the term "debt" to refer to money owed by a patient to a hospital after partial payment of a hospital bill by the patient's insurance company. *See* § 6–20–202(1)(a), C.R.S. (2011) (notice of "debt" must be given to patient prior to "assignment of the debt to a licensed collection agency" when health benefit coverage only provides partial payment for care or treatment).

¶ 20 Lego's debt is "liquidated," as asserted by Amicus Curiae Colorado Hospital Association, because it is capable of ascertainment by simple computation using extrinsic evidence of the pre-determined costs of the medical services that Porter provided Mrs. Lego. *See Rotenberg*, 899 P.2d at 367. Section 6–20–101(1), C.R.S. (2011), requires hospitals to disclose to each patient his or her right to receive notice of "average facility charges" for medical treatment prior to providing care. This advance disclosure provision implies that hospitals calculate "average facility charges" prior to delivering medical services. Because these charges are pre-calculated by operation of law, a hospital bill is capable of ascertainment by simple computation by adding pre-determined medical costs together to arrive at a total amount due.

¶ 21 Here, the hospital presented Lego with an itemized written breakdown of Mrs. Lego's medical expenses. Each line item included a code with a specific pre-determined charge for the service provided. Porter's Supervisor of Revenue Management testified at trial that these individual prices reflected the "market standard rate" for each service as pre-calculated by the hospital's computer billing system. Like the "average facility charges" that hospitals must maintain and disclose upon a patient's request, *see* section 6–20–101(1), trial testimony indicated that these market standard rates are uniform and established.

¶ 22 By adding the itemized charges together, one could easily compute the total value of the medical expenses Mrs. Lego incurred during her hospital stay. One more simple calculation, a subtraction of the amount of the total bill covered by insurance, led to the $144,044.36 claimed by Porter. The fact that Lego disputed the itemized bill "does not affect the character and classification of [the] claim as being liquidated." *Rotenberg*, 899 P.2d at 367 (citations omitted). The $144,044.36 hospital bill was therefore a "liquidated debt," and Porter's action was subject to the six-year statute of limitations in section 13–80–103.5(1)(a).[2] Because we

2. We note that Porter's claim was not, as the

court of appeals held, an action sounding in

hold that Porter's claim was for a liquidated debt and is therefore subject to section 13–80–103.5(1)(a), we need not interpret the meaning of the term "unliquidated, determinable amount."

## V. Conclusion

¶ 23 A "liquidated debt" for the purposes of section 13–80–103.5(1)(a) in the hospital bill context is either an amount stated in an agreement, or an amount that may be ascertained by simple computation using extrinsic evidence of pre-determined medical costs if necessary. The six-year statute of limitations in section 13–80–103.5(1)(a) applies to Porter's breach of implied in fact contract action because the $144,044.36 claimed by Porter was a liquidated debt. Even if the action accrued, as Lego argues, in November 2001, Porter's "money owed" claim was timely filed within the six-year limitations period on April 28, 2005. We accordingly reverse the judgment of the court of appeals that Porter's claim was barred by section 13–80–101(1)(a) and remand for further proceedings consistent with this opinion.

quantum meruit because the amount owed under the contract was a liquidated debt rather than an undetermined amount. *Cf. Larson v. Am. Nat'l. Bank,* 174 Colo. 424, 428–29, 484 P.2d 1230, 1232 (1971) (implied in fact contract lacked a price term, therefore amount of recovery sounded in quantum meruit and was the reasonable value of services rendered).